**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM,
YONG JIN JO, and SAM HYUN KIM, individually and on
behalf all other employees similarly situated,

Plaintiffs,

- against –

EVERGREEN ADULT DAYCARE IN NY INC d/b/a
EVERGREEN ADULT DAY CARE a/k/a EVERGREEN
ADULT DAYCARE (BRANCH 1) a/k/a EVERGREEN
ADULT DAYCARE (BRANCH 2) a/k/a EVERGREEN
ADULT DAYCARE (BRANCH 3), EVERGREEN
ADULT DAYCARE IN FLUSHING INC d/b/a
EVERGREEN ADULT DAYCARE a/k/a EVERGREEN
DAYCARE (BRANCH 1), EVERGREEN SENIOR
SERVICES INC d/b/a EVERGREEN ADULT DAYCARE
a/k/a EVERGREEN ADULT DAYCARE (BRANCH 2),
EVERGREEN ADULT DAYCARE CENTER INC d/b/a
EVERGREEN ADULT DAYCARE a/k/a EVERGREEN
ADULT DAYCARE (BRANCH 3), JAMES KOO a/k/a
Byungki Koo, YANGIM KANG, and BEN HUR,

Defendants.

Case No.

**FLSA COLLECTIVE ACTION**
**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM

HYUN KIM, ("Plaintiffs"), individually and on behalf of others similarly situated, by and through

their attorneys, Seo Law Group, PLLC, upon their knowledge and belief, and as against

EVERGREEN ADULT DAYCARE IN NY INC d/b/a EVERGREEN ADULT DAY CARE a/k/a

EVERGREEN ADULT DAYCARE (BRANCH 1) a/k/a EVERGREEN ADULT DAYCARE

(BRANCH 2) a/k/a EVERGREEN ADULT DAYCARE (BRANCH 3), EVERGREEN ADULT

DAYCARE IN FLUSHING INC d/b/a EVERGREEN ADULT DAYCARE a/k/a EVERGREEN

DAYCARE (BRANCH 1), EVERGREEN SENIOR SERVICES INC d/b/a EVERGREEN

ADULT DAYCARE a/k/a EVERGREEN ADULT DAYCARE (BRANCH 2), EVERGREEN

ADULT DAYCARE CENTER INC d/b/a EVERGREEN ADULT DAYCARE a/k/a EVERGREEN ADULT DAYCARE (BRANCH 3) ("Evergreen Adult Daycare" or "Corporate Defendants"), JAMES KOO a/k/a Byungki Koo, YANGIM KANG, and BEN HUR ("Individual Defendants") (collectively, "Defendants"), respectfully allege as follows:

## <u>NATURE OF THE ACTION</u>

1.      This action is brought by Plaintiffs on their own behalf and on behalf of similarly situated employees who work(ed) as service staff at Evergreen Adult Daycare's business premises (inclusive of Evergreen Adult Daycare's Branch offices located at 37-10 149th Place, Flushing, NY 11354; 42-19 Bell Blvd., Bayside, NY 11361; and 150-12 Roosevelt Ave., Flushing, NY 11354), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") for various willful and unlawful employment policies, patterns, and/or practices.

2.      Plaintiffs Hee Ryang Kim and Kang H. Yi bring additional claims for violations of the New York Human Rights Law ("NYHRL") and the New York City Human Rights Law ("NYCHRL"), arising from a hostile work environment created by Defendant Yangim Kang.

3.      Plaintiffs Hee Ryang Kim and Kang H. Yi further bring claim for Defendant Yangim Kang's retaliatory conduct in violation of the NYLL § 740.

4.      Plaintiff Hee Ryang Kim further brings claim for Defendant Yangim Kang's defamatory conduct in violation of common law.

5.      Evergreen Adult Daycare provides various types of senior care services to individuals, such as meal service, car service, social service, and class lesson service, at Evergreen Adult Daycare's branch locations.

6.      Evergreen Adult Daycare paid Plaintiffs and other similarly situated and former service staff pursuant to a similar, if not the same, compensation structure.

7.      Defendants classified Plaintiffs, and other similarly situated and former service staff employees, as non-exempt from overtime.

8.      Plaintiffs, and other similarly situated and former service staff employees, worked as "[adult daycare] service staff," meaning that they provided senior care services to accommodate Evergreen Adult Daycare's customers' needs, including but not limited to preparing meals and snacks, cleaning the adult day care center, organizing tables/amenities, driving customers from/to the adult daycare center, pharmacies, hospitals, grocery stores, and/or various social service entities, playing bingo-games, preparing/setting recreational items, arranging birthday parties, offering music classes (or signing together), assisting customers with applying for Medicaid benefits, food stamps, and addressing other issues with the application/renewal forms, and arranging transportation to fulfill the customers' other personal needs.

## JURISDICTION AND VENUE

9.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate adult daycare center(s) located in this district. Further, Plaintiffs were employed by Defendants in this district.

## **THE PARTIES**

### *Plaintiffs*

#### *Plaintiff Hee Ryang Kim ("Plaintiff Hee Kim")*

11.     Plaintiff Hee Ryang Kim (hereafter, "Plaintiff Hee Kim") is an adult individual residing in Queens County, New York.

12.     Plaintiff Hee Kim was employed by Defendants at Evergreen Adult Daycare Center as service staff member from approximately September 2015 until on or about October 22, 2021.

13.     Plaintiff Hee Kim consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

14.     The consent to sue form for the Plaintiff Hee Kim is attached hereto as Exhibit 1.

#### *Plaintiff Kang H. Yi ("Plaintiff Yi")*

15.     Plaintiff Kang H. Yi (hereafter, "Plaintiff Yi") is an adult individual residing in Queens County, New York.

16.     Plaintiff Yi was employed by Defendants at Evergreen Adult Daycare Center as a service staff member from approximately December 16, 2019 until on or about October 4, 2021.

17.     Plaintiff Yi consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

18.     The consent to sue form for the Plaintiff Yi is attached hereto as Exhibit 2.

#### *Plaintiff Chul Zik Kim ("Plaintiff Chul Kim")*

19.     Plaintiff Chul Zik Kim (hereafter, "Plaintiff Chul Kim") is an adult individual residing in Queens County, New York.

20. Plaintiff Chul Kim was employed by Defendants at Evergreen Adult Daycare Center as a service staff member from approximately February 2017 until on or about March 20, 2020.

21. Plaintiff Chul Kim consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

22. The consent to sue form for the Plaintiff Chul Kim is attached hereto as Exhibit 3.

*Plaintiff Yong Jin Jo ("Plaintiff Jo")*

23. Plaintiff Yong Jin Jo (hereafter, "Plaintiff Jo") is an adult individual residing in Queens County, New York.

24. Plaintiff Jo was employed by Defendants at Evergreen Adult Daycare Center as a service staff member from approximately June 18, 2018, until on or about June 30, 2021.

25. Plaintiff Jo consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

26. The consent to sue form for the Plaintiff Jo are attached hereto as Exhibit 4.

*Plaintiff Sam Hyun Kim ("Plaintiff Sam Kim")*

27. Plaintiff Sam Hyun Kim (hereafter, "Plaintiff Sam Kim") is an adult individual residing in Queens County, New York.

28. Plaintiff Sam Kim was employed by Defendants at Evergreen Adult Daycare Center as a service staff member from approximately July 2019 until the beginning of April 2021.

29. Plaintiff Sam Kim consents to being a party plaintiff pursuant to 29 U.S.C. §216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. §216(b).

30. The consent to sue form for the Plaintiff Sam Kim is attached hereto as Exhibit 5.

## CORPORATE DEFENDANTS

***Evergreen Adult Daycare in NY Inc*** (*is believed to be a parent/successor corporation of Evergreen Adult Daycare in Flushing Inc, Evergreen Senior Services Inc, and Evergreen Adult Daycare Center Inc or a joint employer with Evergreen Adult Daycare in Flushing Inc, Evergreen Senior Services Inc, and Evergreen Adult Daycare Center Inc, or both*)

31. The Corporate Defendant, Evergreen Adult Daycare in NY Inc, is a domestic business corporation and existing under the laws of the State of New York with a Service of Process address at 149-18 41st Avenue, Flushing, NY 11355 in the New York Department of State record.

32. Upon information and belief, Corporate Defendant, Evergreen Adult Daycare in NY Inc operates several adult daycare centers (collectively "Evergreen Adult Daycare") located at:

   a. 37-10 149th Place, Flushing, NY 11354 ("Branch 1");

   b. 42-19 Bell Blvd., Bayside, NY 11361 ("Branch 2");

   c. 150-12 Roosevelt Ave., Flushing, NY 11354 ("Branch 3"); and,

   d. 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 (new location for "Branches 1&2").

33.     Upon information and belief, Evergreen Adult Daycare in NY Inc was incorporated on August 14, 2012, and filed its Assumed Name as "Evergreen Adult Daycare 3" on July 15, 2021, with the New York Department of State.

34.     Upon information and belief, Defendant, Evergreen Adult Daycare in NY Inc, is either the successor corporation of Evergreen Adult Daycare in Flushing Inc or was a co-operator of Evergreen Adult Daycare (Branch 1) located at 37-10 149th Place, Flushing, NY 11354, together with Evergreen Adult Daycare in Flushing Inc.

35.     Upon information and belief, Defendant, Evergreen Adult Daycare in NY Inc, is either the successor corporation of Evergreen Senior Services Inc or is/was a co-operator of Evergreen Adult Daycare (Branch 2) located at 42-19 Bell Blvd., Bayside, NY 11361, together with Evergreen Senior Services Inc.

36.     Upon information and belief, Defendant, Evergreen Adult Daycare in NY Inc, is a co-operator of Evergreen Adult Daycare (Branch 3) located at 150-12 Roosevelt Ave., Flushing, NY 11354, together with Evergreen Adult Daycare Center Inc.

37.     Upon information and belief, Evergreen Adult Daycare in NY Inc is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

38.     Evergreen Adult Daycare in NY Inc is an "employer" within the meaning of the FLSA 29 U.S.C §  203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651

that runs and profits from a business operation as an adult daycare center based at 37-10 149th Place, Flushing, NY 11354 ("Evergreen Adult Daycare Branch 1"); 42-19 Bell Blvd., Bayside, NY 11361 ("Evergreen Adult Daycare Branch 2"); and 150-12 Roosevelt Ave., Flushing, NY 11354 ("Evergreen Adult Daycare Branch 3"), and 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 (new location for "Evergreen Adult Daycare (Branches) 1 and 2").

*Evergreen Adult Daycare in Flushing Inc*

39. Upon information and belief, Defendant Evergreen Adult Daycare in Flushing Inc is a domestic "inactive" business corporation as of January 17, 2017, that was previously existing under the laws of the State of New York with Service of Process address at 37-10 149th Pl, Num 1A, Flushing, NY 11354.

40. Upon information and belief Evergreen Adult Daycare in Flushing Inc operated/operates an adult daycare center at the principal place of business located at 37-10 149th Place, Flushing, NY 11354 as "Evergreen Adult Daycare" and/or "Evergreen Adult Daycare (Branch 1)."

41. Upon information and belief, Defendant, Evergreen Adult Daycare in Flushing Inc, is either the predecessor corporation of Evergreen Adult Daycare in NY Inc or is/was a co-operator of Evergreen Adult Daycare (Branch 1) located at 37-10 149th Place, Flushing, NY 11354 and 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354, together with Evergreen Adult Daycare in NY Inc.

42. Upon information and belief, Evergreen Adult Daycare in Flushing Inc is presently "inactive" but was, at times relevant to the allegations in this Complaint, an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of

goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

43.     Evergreen Adult Daycare in Flushing Inc is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as an adult daycare center based at 37-10 149th Place, Flushing, NY 11354 (Evergreen Adult Daycare "Branch 1").

44.     Upon information and belief, Evergreen Adult Daycare Branch 1 moved to a new location at 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 in or around June 2021.

***Evergreen Senior Services Inc***

45.     Upon information and belief, Defendant Evergreen Senior Services Inc (d/b/a Evergreen Adult Daycare, a/k/a Evergreen Adult Daycare (Branch 2), a/k/a/ Evergreen Daycare) is a domestic "inactive" business corporation as of September 7, 2018, that was previously existing under the laws of the State of New York with Service of Process address at 37-10 149th Place, Flushing, NY 11354.

46.     Upon information and belief Evergreen Senior Services Inc operated/operates an adult daycare center at the principal place of business located at 42-19 Bell Blvd., Bayside, NY 11361 as "Evergreen Adult Daycare" and/or "Evergreen Adult Daycare (Branch 2)."

47.     Upon information and belief, Defendant, Evergreen Senior Services Inc, is either the predecessor corporation of Evergreen Adult Daycare in NY Inc or is/was a co-operator of Evergreen Adult Daycare (Branch 2) located at 42-19 Bell Blvd., Bayside, NY 11361, together with Evergreen Adult Daycare in NY Inc.

48.     Upon information and belief, Evergreen Senior Services Inc is presently "inactive" but was, at times relevant to the allegations in this Complaint, an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

49.     Evergreen Senior Services Inc is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as an adult daycare center based at 42-19 Bell Blvd., Bayside, NY 11361 (Evergreen Adult Daycare "Branch 2").

50.     Upon information and belief, Branch 2 was "merged" into Branch 1 at the new location addressed at 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 in or around January 2022.

***Evergreen Adult Daycare Center Inc***

51.     The Corporate Defendant, Evergreen Adult Daycare Center Inc, is a domestic business corporation organization and existing under the laws of the State of New York with Service of Process addressed at 150-12 Roosevelt Ave., Flushing, NY 11354 in the New York Department of State record with Service of Process address at 150-12 Roosevelt Ave., Flushing, NY 11354

52.     Upon information and belief Evergreen Adult Daycare Center Inc operates an adult daycare center at the principal place of business located at cas "Evergreen Adult Daycare" and/or Evergreen Adult Daycare (Branch 3)."

53.     Upon information and belief, Defendant, Evergreen Adult Daycare Center Inc, is a co-operator of Evergreen Adult Daycare (Branch 3) located at 150-12 Roosevelt Ave., Flushing, NY 11354, together with Evergreen Adult Daycare in NY Inc.

54.     Upon information and belief, Evergreen Adult Daycare Center Inc is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

55.     Evergreen Adult Daycare Center Inc is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as an adult daycare center based at 150-12 Roosevelt Ave., Flushing, NY 11354 (Evergreen Adult Daycare "Branch 3").

## INDIVIDUAL DEFENDANTS

***Defendant James Koo** (a/k/a Byungki Koo) **("Defendant Koo")***

56.     Upon information and belief, Defendant James Koo (a/k/a Byungki Koo) (hereafter, "Defendant Koo") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and he is sued individually. Defendant Koo has possessed and exercised operational control over Defendant Corporations, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In

particular, Defendant Koo has a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

57.     Upon information and belief, Defendant Koo has ownership interest in the Corporate Defendants, and he is a manager and supervisor of all his employees and the employees of the Corporate Defendants.

58.     Upon information and belief, Defendant Koo is the Founder and CEO of Evergreen Adult Daycare center and all of its "Branch" offices (i.e., Evergreen Adult Daycare Branch(es) 1, 2, and 3), located in New York.

59.     Defendant Koo is known to Plaintiffs as the "owner" of Evergreen Adult Daycare and its Branches.

60.     Upon information and belief, Defendant Koo manages all aspects of the Corporate Defendants' finances including handling their employees' payrolls.

***Defendant Yangim Kang ("Defendant Kang")***

61.     Upon information and belief, Defendant Yangim Kang (hereafter, "Defendant Kang"), is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and she is sued individually. Defendant Kang has possessed and exercised operational control over Defendant Corporations. For example, she has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Kang has a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

62.     Upon information and belief, Defendant Kang has ownership interest in the Corporate Defendants, and she is a manager and supervisor of all her employees and the employees of the Corporate Defendants, specifically at Evergreen Adult Daycare "Branch 3."

63.     Defendant Kang is known to Plaintiffs as a "shareholder" of Evergreen Adult Daycare and "director" at Evergreen Adult Daycare "Branch 3."

64.     Upon information and belief, Defendant Kang is a one of the signatories of the Corporate Defendants Evergreen Adult Daycare's business account, tougher with Defendants Koo and Ben Hur.

### Defendant Ben Hur ("Defendant Hur")

65.     Upon information and belief, Defendant Ben Hur (hereafter, "Defendant Hur"), is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and he is sued individually. Defendant Hur has possessed and exercised operational control over Defendant Corporations, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Hur has a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

66.     Upon information and belief, Defendant Hur has an ownership interest in the Corporate Defendants, and he is a manager and supervisor of all his employees and the employees of the Corporate Defendants.

67.     Defendant Hur is known to Plaintiffs as a "director" of Evergreen Adult Daycare and "president and/or principal" at Evergreen Adult Daycare "Branch 3."

68.     Defendant Hur is also known to Plaintiffs as Defendant Kang's "right-hand person" at Evergreen Adult Daycare.

69.     Upon information and belief, Defendant Hur is a one of the signatories of the Corporate Defendants Evergreen Adult Daycare's business account, tougher with Defendants Koo and Kang.

70.     Plaintiffs were "employees" of Individual Defendants, James Koo, Yangim Kang, and Ben Hur, within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

71.     Plaintiffs were "employees" of Corporate Defendants, Evergreen Adult Daycare, within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

72.     Defendants James Koo, Yangim Kang, Ben Hur, and Corporate Defendants through Individual Defendants controlled the hours, the task assignments and the overall work associated with Plaintiffs' work at the business premises of Evergreen Adult Daycare.

73.     Defendants James Koo, Yangim Kang, Ben Hur, and Corporate Defendants through Individual Defendants, controlled the terms and conditions of Plaintiffs' employment and are thus "employers" within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3).

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

74.     Defendants operate an adult daycare center(s) where the Plaintiffs worked. At all relevant times, Individual Defendants Koo, Kang, and Hur possess or possessed operational control over Corporate Defendants; possess or possessed an ownership interest in Corporate Defendants; and control or controlled significant functions of Corporate Defendants.

75. Corporate Defendants and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

76. At relevant times, each Corporate Defendant possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

77. Corporate Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' and all similarly situated individuals' employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

78. In the alternative, Corporate Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals, as the corporate divisions between them are fictional.

79. Upon information and belief, Individual Defendants operate Corporate Defendants as either an alter ego of themselves and/or fail to operate Defendant Corporations as an entity legally separate and apart from themselves, by among other things:

> e. failing to adhere to the corporate formalities necessary to operate Corporate Defendant(s) as a Corporation(s);
>
> f. defectively forming or maintaining the corporate entity of Corporate Defendant(s), by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;
>
> g. transferring assets and debts freely as between all Defendants;
>
> h. operating Corporate Defendant(s) for his/her/their own benefit as the sole or majority shareholders;

      i.   operating Corporation Defendant(s) for his/her/their own benefit and maintaining control over this corporation(s) as a closed corporation(s);

      j.   intermingling assets and debts of his/her/their own with Corporate Defendant(s);

      k.   diminishing and/or transferring assets of Corporate Defendant(s) to avoid full liability as necessary to protect their own interests, and

      l.   Other actions evincing a failure to adhere to the corporate form.

80.     At all relevant times, Individual Defendants were Plaintiffs' employers within the meaning of the FLSA, NYLL and other law.

81.     Individual Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

82.     Individual Defendants supervised Plaintiffs' work schedules and conditions of their employment.

83.     Individual Defendants also determined the rate and method of payment for Plaintiffs and other similarly situated employees.

84.     Individual Defendants also controlled and guided what limited recordkeeping that took place which Plaintiffs contend is deficient pursuant to FLSA and NYLL requirements.

### ***Plaintiff Hee Ryang Kim ("Plaintiff Hee Kim")***

85.     Plaintiff Hee Kim is a former employee of Defendants, primarily employed in performing the duties as a service staff member such as preparing meals and snacks, playing bingo-games, preparing/setting recreational items, arranging birthday parties, offering music classes (or signing together), and arranging transportation to fulfill Evergreen Adult Daycare customers' other

personal needs. Additionally, Plaintiff Hee Kim was also responsible for driving customer(s) home upon request and comforting customers by serving tea and bagels when they arrive at Evergreen Adult Daycare in the morning.

86.     Plaintiff Hee Kim did not work at her own convenience, having to report to work according to a schedule devised by Defendants. Furthermore, once scheduled for a shift, Plaintiff Hee Kim did not come and go at her pleasure but rather was controlled by Defendants.

87.     Plaintiff Hee Kim is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Hee Kim did not occupy what law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff Hee Kim's employment for Defendants was physical labor.

88.     Plaintiff Hee Kim commences this action as a collective action under 29 U.S.C. § 216(b).

89.     Plaintiff Hee Kim regularly handled goods in interstate commerce, such as produce and communication devices that produced outside of the State of New York.

90.     Plaintiff Hee Kim's work duties required neither discretion nor independent judgment.

91.     Throughout Plaintiff Hee Kim's employment with Defendants, Plaintiff Hee Kim regularly worked in excess of 40 hours per week, specifically since around April 2016.

***Plaintiff Hee Kim's Work Schedule***

92.     Plaintiff Hee Kim was employed by Defendants at Evergreen Adult Daycare's 3 Branches located at 37-10 149th Place, Flushing, NY 11354 ("Branch 1"); 42-19 Bell Blvd., Bayside, NY 11361 ("Branch 2"); and 150-12 Roosevelt Ave., Flushing, NY 11354 ("Branch 3") from approximately September 2015 until October 22, 2021.

93.     Upon information and belief, one of Evergreen Adult Daycare Branch 1's manager conducted Plaintiff Hee Kim's interview on behalf of its general owner, Defendant Koo, and eventually employed by Defendants to work as Evergreen Adult Daycare's service staff.

94.     From approximately September 2015 until January 2017, Plaintiff Hee Kim worked at Defendants' adult day care center, Evergreen Adult Daycare, at its Branch 1 location at 37-10 149th Place, Flushing, NY 11354.

95.     Upon information and belief, Branch 1 has or had approximately 15 employees to serve around 200 customers.

96.     At Branch 1, Plaintiff Hee Kim worked under the direct supervision of Defendants' Branch 1 manager(s) and general supervision of other Individual Defendants.

97.     Upon information and belief, Evergreen Adult Daycare Branch 1 moved to a new location at 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 in or around June 2021.

98.     During Plaintiff Hee Kim's employment at Branch 1, her duties included, but were not limited to, preparing meals, shopping necessary items for customers such as personal hygienic products, toilet papers, snacks, and grocery shopping, equipping bingo-game/recreational items, playing bingo-game with customers, providing signing lessons, preparing birthday party, arranging car services for Evergreen Adult Daycare's customers, and addressing the customers' other needs.

99.     Furthermore, Plaintiff Hee Kim was occasionally required to pick up customers after her working hours whenever she received a phone call from customers and/or their family members in the event of emergency, such as when the customers got lost in the airport and whenever they needed her help on emergency situation.

100.    Although Evergreen Adult Daycare Branch 1's official "opening hour" was 8:00 am from Monday through Friday, Plaintiff Hee Kim was required to arrive early before the official "opening hour" at Branch 1 in order to prepare for her daily duties as a service staff member.

101.    While Plaintiff Hee Kim worked *part-time* at Branch 1 from approximately September 2015 to March 2016, she worked a schedule of Monday through Friday from approximately 7:30 am to 2:00 pm without any uninterrupted break. During this period, Plaintiff Hee Kim worked (5) days per week and worked approximately (32.5) hours per week.

102.    Thereafter, Evergreen Adult Daycare's former general manager at Branch 1 conveyed Defendant James Koo's decision to Plaintiff Hee Kim that Evergreen Adult Daycare decided to hire Plaintiff Hee Kim as full-time service staff member. At that time, Plaintiff Hee Kim was informed that full-time service staff's "official" work-hours would last from 8:00 am to 4:00 pm from Monday through Friday, regardless of the location of the Evergreen Adult Daycare's Branch, but Plaintiff Hee Kim was required to work additional hours.

103.    Since around April 2016, *except for the period while Plaintiff Hee Kim was working at Branch 2 for three months*, she worked as a full-time service staff member for Evergreen Adult Daycare's Branch 1 and Branch 3 locations on-site and off-site. During this period, Plaintiff Hee Kim worked the following schedule(s):

    a.  *"Regular On-Site Working Schedule"*: From Monday through Friday from approximately 6:30 am to 5:00 pm, Plaintiff Hee Kim worked as a service staff member at different Branches for five 5 days a week for around (52.5) hours per week;

    b.  *"Regular Off-Site Working Schedule"*: Any days after around 5:00 pm, Plaintiff Hee Kim spent approximately (1-2) additional hours each day to pick up the

customers' phone calls to address their after-hour needs, and occasionally, providing/arranging car services for the customers; and,

c. "*Event-Season On-Site Working Schedule*": Approximately in every 1-2 week(s) per month for 4-5 days each week, Plaintiff Hee Kim was required to spend approximately (3) additional hours at the Branch locations until 7:00 pm – 8:00 pm to prepare customers' birthday parties and holiday events.

104.    Since approximately April 2016, Plaintiff Hee Kim began working as a service staff member on the full-time schedule at Evergreen Adult Daycare Branch 1 located at 37-10 149th Place, Flushing, NY 11354, until January 2017. During this period, Plaintiff Hee Kim worked approximately (70) hours per week in total. (i.e., (52.5) hours on *"Regular On-Site Working Schedule*" + (maximum of 10) hours on "*Regular Off-Site Working Schedule*" + (7.5) average weekly [*or 15 bi-weekly*] hours "*Event-Season On-Site Working Schedule.*").

105.    In or around January 2017, Individual Defendants, through Branch 1's former general manager, required Plaintiff Hee Kim to work at Evergreen Daycare Branch 2 located at 42-19 Bell Blvd., Bayside, NY 11361 for a couple month until Evergreen Adult Daycare Branch 3 was ready for operation.

106.    From around February 2017 until April 2017, Plaintiff Hee Kim worked as an Evergreen Adult Daycare's service staff member at the Branch 2 location. During this period, Plaintiff Hee Kim worked on the same regular schedule, but was not required to work additional hours during the "Event-Season(s)." At Branch 2, Plaintiff Hee Kim worked approximately (62.5) hours per week in total. (i.e., (52.5) hours on *"Regular On-Site Working Schedule*" + (maximum of 10) hours on "*Regular Off-Site Working Schedule*").

107.     Although Evergreen Adult Daycare Branch 2's official "opening hour" was 8:00 am from Monday through Friday, Plaintiff Hee Kim was required to arrive early before the official "opening hour" at Branch 2 to "comfort" the customers at the Bagel shop near the Branch 2 location until the site was open and prepare for her daily duties as a service staff member.

108.     Upon information and belief, Branch 2 has or had approximately 12 employees to serve around 150 customers.

109.     At Branch 2, Plaintiff Hee Kim worked under the direct supervision of Defendant Koo and general supervision of other Individual Defendants.

110.     Upon information and belief, Branch 2 was "merged" into Branch 1 at the new location addressed at 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 in or around January 2022.

111.     As soon as Evergreen Adult Daycare Branch 3 started its operation in May 2017, Individual Defendants required Plaintiff Hee Kim to work at Branch 3 located at 150-12 Roosevelt Ave., Flushing, NY 11354.

112.     Upon information and belief, Branch 3 has or had approximately 15 employees to serve around 250 customers.

113.     At Branch 3, Plaintiff Hee Kim worked under the direct supervision of Defendants Yangim Kang and Ben Hur, and general supervision of Defendant James Koo.

114.     From in or around May 2017 until October 22, 2021, Plaintiff Hee Kim worked as an Evergreen Adult Daycare service staff member at the Branch 3 location. During this period, Plaintiff Hee Kim worked on the same regular schedule as follows: approximately (70) hours per week in total. (i.e., (52.5) hours on *Regular <u>On-Site</u> Working Schedule*" + (maximum of 10) hours

on "*Regular <u>Off-Site</u> Working Schedule*" + (7.5) average weekly [*or 15 bi-weekly*] hours "*Event-Season <u>On-Site</u> Working Schedule*.").

**Plaintiff Hee Kim's Pay**

115.     From in or around September 2015 to March 2016, Plaintiff Hee Kim's fixed daily rate was essentially $60.00 per day and was paid $600.00 bi-weekly.

116.     From in or around April 2016 to October 2016, Defendant Koo unilaterally determined the amount of Plaintiff Hee Kim's bi-weekly compensation, similar to a $24,000 yearly salary. During this period, Plaintiff Hee Kim's fixed weekly rate was essentially around $461.54 per week and was paid approximately $923.08 bi-weekly regardless of how many hours she actually worked.

117.     From in or around November 2016 to May 2018, Defendant Koo again, unilaterally determined the amount of Plaintiff Hee Kim's bi-weekly compensation, similar to a $30,000 yearly salary. During this period, Plaintiff Hee Kim's fixed weekly rate was essentially around $576.92 per week and was paid approximately $1,153.84 bi-weekly regardless of how many hours she actually worked.

118.     From in or around June 2018 to November 2018, Plaintiff Hee Kim was paid $1,538.46 bi-weekly, regardless of how many hours she actually worked.

119.     From in or around December 2018 to June 2021, Plaintiff Hee Kim was paid $1,730.77 bi-weekly, regardless of how many hours she actually worked.

120.     From in or around July 2021 to October 22, 2021, Plaintiff Hee Kim was paid $1,900.00 bi-weekly, regardless of how many hours she actually worked.

121.     During Plaintiff Hee Kim's employment, Defendants paid her compensation by check.

122.   Upon information and belief, Defendant Koo issued the paycheck on behalf of Evergreen Adult Daycare. Defendant Koo signed employees' paychecks, including Plaintiff Hee Kim's, at Branch 2 and delivered the paychecks to the employees at different Branches through a corporate secretary and/or the general managers at each of Evergreen Adult Daycare's Branches.

123.   Upon information and belief, Defendant Kang started issuing Evergreen Adult Daycare employees' paycheck, together with Defendant Koo, at some point during Plaintiff Hee Kim's employment with Defendants.

124.   Defendants calculated Plaintiff Hee Kim's wages based on a fixed rate and generally paid her below the NYS minimum wage rate.

125.   Defendants failed to pay Plaintiff Hee Kim appropriate overtime compensation as required by federal and state laws when they required her to work in excess of 40 hours a week.

126.   Defendants did not give any notice to Plaintiff Hee Kim in English, and in her primary language, of her rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

127.   Defendants did not provide Plaintiff Hee Kim an accurate statement of wages, as required by NYLL 195§ (3).

128.   Defendants did not pay Plaintiff Hee Kim one additional hour's pay at the basic minimum wage rate before allowance for each day Plaintiff Hee Kim's spread of hours exceeded ten hours.

***Plaintiff Hee Kim's Hostile Work Environment and Retaliation Claims***

129.   Evergreen Adult Daycare owns, operates, or controls an adult day care, which provides various types of senior services to the customers, through its Branches located in multiple regions in the State of New York and Hawaii. Evergreen Adult Daycare operates or operated at

least 5 Branches in New York such as *Branch 1* located at 37-10 149th Place, Flushing, NY 11354 (former location) and 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 (new location); *Branch 2* located at 42-19 Bell Blvd., Bayside, NY 11361 (former location) and 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 (new location); and *Branch 3* 150-12 Roosevelt Ave., Flushing, NY 11354, and oversees the general affairs of its Branches located in different regions within the New York State and Hawaii.

130.    Evergreen Adult Daycare and its Branches are integrated operation as all of the Evergreen Adult Daycare's Branches, including the New York Branches, are under the oversight of Evergreen Adult Daycare and operates its business under the same d/b/a name.

131.    Upon information and belief, Evergreen Adult Daycare is registered as Managed Long-Term Care (MLTC) provider with Age Well, Centers Plan for Healthy Living, Integra, Senior Health Partners, Empire Blue Cross Blue Shield, and Senior Whole Health in New York State (collectively, referred to as "insurance company").

132.    Upon information and belief, the directors of Evergreen Adult Daycare and its Branches made their personnel and other decisions in consultation with Individual Defendants. Specifically at Branch 3, Defendants Hur and Kang made their personnel and other decisions in consultation with Defendant Koo.

133.    Upon information and belief, Defendants Hur, Kang, and Koo had supervisory hiring and firing authority over Plaintiff Hee Kim and other Evergreen Adult Daycare's service staff.

134.    Defendant Koo was known to Plaintiff Hee Kim to be the "owner" of Evergreen Adult Daycare and all of its Branches.

135. Defendant Koo was physically present at Branch 3 at least 1 -3 days each week to oversee the general affairs of Branch 3's business.

136. Defendant Kang is known to Plaintiff Hee Kim as a "shareholder" of Evergreen Adult Daycare and "director" at Evergreen Adult Daycare Branch 3.

137. Defendant Hur is known to Plaintiff Hee Kim as a "director" of Evergreen Adult Daycare and "president and/or principal" at Evergreen Adult Daycare Branch 3.

138. Throughout the time Plaintiff Hee Kim performed work for Defendants at Branch 3, she was under the direct supervision of Defendants Hur and Kang, as well as Defendant Koo specifically when he was physically present at Branch 3.

139. Upon information and belief, Defendant Kang started to get involved in the operation of Branch 3 and closely managed the Branch 3's service staff beginning approximately 5 years ago.

140. Even if Defendant Kang was out of country, she continued to closely manage Evergreen Adult Daycare's employees via remote means. Plaintiff Hee Kim was required to report to Defendant Kang by sending text messages via Kakaotalk mobile application, and Defendant Kang assigned tasks and supervised Plaintiff Hee Kim remotely while she was staying in Korea.

141. As soon as Plaintiff Hee Kim started working at Branch 3 in May 2017, Defendant Kang required Plaintiff Hee Kim to handle the Branch 3 customers' "attendance check." Defendant Kang requested Plaintiff Hee Kim to get the individual customers' signatures on an "attendance sheet" to submit it to the insurance company(ies) to get paid as a Managed Long-Term Care ("MLTC") provider of services.

142. Defendants provided Plaintiff Hee Kim with a customers' contact list to contact the customers after her official working hours to address their needs.

143. Defendant Kang told Plaintiff Hee Kim that she should contact as many customers as possible to make sure that they continue to come to Branch 3 so that Evergreen Adult Daycare could get paid by the insurance company(ies).

144. At Defendant Kang's request, Plaintiff Hee Kim received the customers' signatures on the "attendance sheet" on daily basis when the customers actually came to Branch 3 and utilized Evergreen Adult Daycare's services.

145. At the start of the Covid-pandemic, the number of customers who personally came to Branch 3 to utilize Evergreen Adult Daycare's services was substantially decreased.

146. Since then, Defendant Kang repeatedly requested Plaintiff Hee Kim to sign the "attendance sheet" on behalf of the missing customers, although they did not come to Branch 3 and never utilized Evergreen Adult Daycare's services on those days.

147. When Plaintiff Hee Kim refused to sign the "attendance sheet" on behalf the missing customers, Defendant Kang started making inappropriate/bitter comments, humiliating Plaintiff Hee Kim in front of her co-workers, penalizing her for things not under her control (i.e., the quality of the food delivered by a third-party catering restaurant, no-show car service staff, and malfunctioning company van), intimidating and threatening Plaintiff Hee Kim that Defendant Kang would notify different government agencies of her (wrongfully accused) misconduct of stealing Evergreen Adult Daycare's money and customers' contact information.

148. For instance, on or about July 21, 2021, Defendant Kang requested Plaintiff Hee Kim to come into her office to investigate Plaintiff Hee Kim for "embezzling" Evergreen Adult Daycare's money that was used for arranging transportation with a third-party company when Evergreen Adult Daycare's the car service was unable to meet all of the customers' needs.

149.    Since Branch 3 had only around 15 service staff members to serve approximately 250 customers, Plaintiff Hee Kim was required to arrange customers' transportation with a third-party company whenever there were no staff members to provide the car service. When Plaintiff Hee Kim arranged transportation with a third-party company, she was required to record the details of the service, such as the amount of the transportation cost, and submitted to Defendants on weekly or bi-weekly basis.

150.    Defendant Hur confirmed the amount of the transportation cost, and Defendant Kang authorized payment on behalf of Evergreen Adult Daycare. Although Defendant Kang was the one who controlled the fund used for the car services, she accused Plaintiff Hee Kim of stealing money without any basis, but only to harass Plaintiff Hee Kim.

151.    On or around July 29, 2021, Defendant Kang blamed Plaintiff Hee Kim when the catering restaurant delivered less fish than the number of customers at Branch 3. As soon as the fish was delivered, Defendant Kang ordered Plaintiff Hee Kim to apologize to the customers, on behalf of the catering restaurant that Plaintiff Hee Kim did not have any relationship with what-so-ever, for the insufficient number of fish. Although Plaintiff Hee Kim apologized to the customers, Defendant Kang yelled at Plaintiff Hee Kim in front of other service staff and customers that "**I know your dirty intention that you ordered less number of fish than the number of customers on purpose,**" and **"I know how bad you wish me to be f***** up, and that's why you always try hard."**

152.    Even after Defendant Kang started placing orders at another catering restaurant of her own choice, she kept blaming and yelling at Plaintiff Hee Kim whenever the restaurant served smaller portion of food, did not deliver the food on time, and/or failed to deliver certain items that Evergreen Adult Daycare ordered. When Plaintiff Hee Kim was having a discussion with other

service staff about the quality of the new catering restaurant's service, Defendant Kang immediately yelled at Plaintiff Hee Kim that she should not blame the restaurant's service [but blame herself]. Plaintiff Hee Kim was surprised at Defendant Kang's reaction but did not say anything back to her because she tried not to "upset" her even more.

153. On many occasions, Defendant Kang subjected Plaintiff Hee Kim to bitter comments and great humiliation. When Plaintiff Hee Kim was looking at a computer screen and talking with another employee to discuss work-related tasks, Defendant Kang criticized Plaintiff Hee Kim's voice stating, "**why did you speak with *that* tone of voice?**" and **"you should fix your tone of voice."**

154. On many occasions, Defendant Kang sent Plaintiff Hee Kim a message via Kakaotalk, a Korean Mobile application for instant messaging, at all hours of the day, 24/7, morning and night. Even if Defendant Kang sent a message later at night, she kept her eyes on the status of the sent message to see whether it changed to "read" status. If Plaintiff Hee Kim did not check her message immediately, Defendant Kang criticized her that Plaintiff Hee Kim was a **"useless employee."** Plaintiff Hee Kim had to literally stand-by to respond to Defendant Kang's messages 24/7 to avoid any absurd criticism Defendant Kang would make.

155. On many occasions, Defendant Kang sarcastically commented on Plaintiff Hee Kim's facial expressions (i.e., un-smiley face) that Defendant Kang did not like. When Plaintiff Hee Kim was concentrating on her tasks, Defendant Kang pointed out Plaintiff Hee Kim's facial expression and told her, **"why your face looks so angry?" "your face looks unpleasant,"** and "**why don't you smile."** Defendant Kang constantly pressured Plaintiff Hee Kim to "smile" and made rude or degrading comments whenever Defendant Kang caught Plaintiff Hee Kim not smiling in the presence and/or absence of other service staff members or customers.

156.     On or around August 30, 2021, one of Branch 3's service staff member's car broke, and Plaintiff Hee Kim was required to make alternative car service arrangement for the customer who had been utilizing the broken car as her transportation. When Plaintiff Hee Kim asked Defendant Kang as to how to arrange the car service for the customer, Defendant Kang responded, **"are you trying to lash out at me? Look at your tone of voice!"** and immediately got angry at Plaintiff Hee Kim.

157.     Defendant Kang always reacted even more angrily when she requested Plaintiff Hee Kim to sign the "attendance sheet" on behalf of the absent customers and Plaintiff Hee Kim refused to do so. On these occasions, Defendant Kang assigned more tasks for Plaintiff Hee Kim to work longer hours.

158.     As Defendant Kang continuously pressured Plaintiff Hee Kim to sign the "attendance sheet," her stress about her situation grew. Almost every morning when Plaintiff Hee Kim got ready to go to work, she started feeling knots in her stomach in anticipating the start of her workday, and the sense of feeling unwanted, pain in the head and back, and short on breath.

159.     On or around September 7, 2021, when Plaintiff Hee Kim was preparing lunch for the customers, Defendant Kang complained to Plaintiff Hee Kim asking why she did not put a salad dish on the lunch table. Since there was not enough room on the table to put an extra dish, Plaintiff Hee Kim decided to omit a salad dish. However, Defendant Kang continuously followed Plaintiff Hee Kim and repetitively inquired that "why didn't you put a salad dish on the table" for at least 3 times. Despite Defendant Kang's repetitive unhappy inquiries, Plaintiff Hee Kim thoroughly explained to her every time she made such inquiry. In response to Plaintiff Hee Kim's explanation, Defendant Kang said, **"I can't tolerate this any longer,"** and "**I'm not sure how long we can do this** [letting her work for Evergreen Adult Daycare]**."** Plaintiff Hee Kim again,

started feeling knots in her stomach, and the sense of feeling unwanted, pushed aside, and on her way to being terminated. On that day, Plaintiff Hee Kim was finally forced to see a doctor as her physical condition worsened and felt unusual pain in the back.

160.     On the next day, around September 8, 2021, Plaintiff Hee Kim went to work at Branch 3 as usual although Plaintiff Hee Kim had no energy to continuously smile at Defendant Kang. As soon as Plaintiff Hee Kim started her day at work, Defendant Kang told her to spend more time on performing the meal service in the kitchen starting the next day instead of arranging the car service because another service staff member wanted to spend more time on arranging the car service. A few hours later, Defendant Kang told Plaintiff Hee Kim that she changed her mind and requested Plaintiff Hee Kim to work on the new tasks starting next week instead of the next day. Plaintiff Hee Kim was very confused and started blaming herself for her inability to forge the attendance sheet the way Defendant Kang requested.

161.     Beginning on or around September 10, 2021, Defendant Kang required Plaintiff Hee Kim to spend most of my workday in the kitchen located on the 2nd floor at Branch 3. Since then, Plaintiff Hee Kim primarily spent her daytime at work to provide meal service for the customers, cleaned the kitchen, and organized the food items. Because Defendant Kang also expected Plaintiff Hee Kim to perform her other duties as a service staff member, she had to remain at the Branch until late at night to complete her tasks.

162.     Thereafter, Plaintiff Hee Kim continuously worked longer hours to satisfy Defendant Kang, avoid her hurtful criticism, and prepare for Korean Thanksgiving holiday event for the customers.  Plaintiff Hee Kim brough up to Defendant Kang about her long working hours without any overtime compensation. Despite that, Defendant Kang assigned even more tasks to Plaintiff Hee Kim to arrange the car service after telling Plaintiff Hee Kim that **"since you are not**

**doing many things at work, why don't you at least arrange the car service?"** Plaintiff Hee Kim felt pressured, restless, and afraid to come back to work the next day. Plaintiff Hee Kim wished that she would just be dead while she was sleeping that night.

163.   As Plaintiff Hee Kim kept refusing to sign the "attendance sheet" for the absent customers, Defendant Kang's harassing conduct and bitter comments grew. In or around the beginning of October 2021, Defendant Kang suddenly started accusing Plaintiff Hee Kim of stealing Evergreen Adult Daycare's client contact lists although Plaintiff Hee Kim had already been responsible for responding to the customers' phone calls and addressing their needs during the "off-hours" for many years. Plaintiff Hee Kim was surprised by Defendant Kang's baseless accusation, but Defendant Kang threatened Plaintiff Hee Kim that she would report Plaintiff Hee Kim to various government agencies if she did not return the customer contact lists and all of their "protected health information that she stole." Thereafter, Plaintiff Hee Kim continued to work at the Branch 3 for a few more weeks but was forced to terminate her employment with Evergreen Adult Daycare since she could no longer endure Defendant Kang's wrongful accusations and was unable to return the things she did not steal and had never stolen.

164.   Even after Plaintiff Hee Kim was forced to terminate, Defendant Kang began maliciously spreading false rumors to current and former Evergreen Adult Daycare's employees alleging that Plaintiff Hee Kim stole money from Evergreen Adult Daycare and the customers' "protected information."

165.   Plaintiff Hee Kim complained to Defendants Hur and Koo about Defendant Kang's hurtful comments and wrongful accusations, but she continued to engage in the unlawful conduct, and no one had ever taken any remedial measures to correct her harassing behavior.

166. Defendant Koo was physically present at the Branch 3 at least 1-3 days each week, but he did not do anything to prevent Defendant Kang's harassing behaviors. Instead, Defendant Koo advised Plaintiff Hee Kim to consider Defendant Kang as a "manic-depression" patient and try her best to be "understanding" of Defendant Kang's harassing conduct.

167. Moreover, Defendant Evergreen Adult Daycare ratified and condoned the unlawful acts of its directors, officers, agents and/or managers.

168. Upon information and belief, Defendant Kang is still employed by Defendants.

169. Defendant Koo, at all relevant times, exercised operation control over Defendants' Evergreen Adult Daycare and its Branches. For instance, Defendant Koo was regularly present at its Branches (i.e., for 1-3 days per week at Branch 1 and 3; and the rest of other days per week at Branch 2), supervising Evergreen Daycare's service staff, including Plaintiff Hee Kim, and paid its employees.

### *Plaintiff Kang H. Yi ("Plaintiff Yi")*

170. Plaintiff Yi is a former employee of Defendants, primarily employed in performing the duties as a service staff such as driving customers from/to the adult daycare center, pharmacies, hospitals, and grocery stores, opening door for the customers, and assisting them to getting in/out of Evergreen Adult Daycare's company van. the Additionally, Plaintiff Yi was also responsible for carrying the delivered food items from the entrance of the branch to the dining area on 2nd floor in the morning, preparing/serving meals for the customers in the afternoon at Evergreen Adult Daycare center, and delivering lunch boxes to the customers at their residence.

171. Plaintiff Yi did not work at his own convenience, having to report to work according to a schedule devised by Defendants. Furthermore, once scheduled for a shift, Plaintiff Yi did not come and go at his pleasure but rather was controlled by Defendants.

172.     Plaintiff Yi is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Yi did not occupy what law would characterize as "professional," "executive" or even "administrative" positions, as Plaintiff Yi's employment for Defendants was physical labor.

173.     Plaintiff Yi commences this action as a collective action under 29 U.S.C. §216(b).

174.     Plaintiff Yi regularly handled goods in interstate commerce, such as produce that was grown and harvested outside of the State of New York.

175.     Plaintiff Yi's work duties required neither discretion nor independent judgment.

176.     Throughout Plaintiff Yi's employment with Defendants, Plaintiff Yi regularly worked in excess of 40 hours per week, except for the period(s) Evergreen Adult Daycare was closed for the Covid-closure, and he was required to perform the lunch box delivery only during the pandemic.

***Plaintiff Yi's Work Schedule***

177.     Plaintiff Yi was employed by Defendants to work at Evergreen Adult Daycare's Branch 3 located at 150-12 Roosevelt Ave., Flushing, NY 11354 from approximately December 16, 2019, until October 4, 2021.

178.     Upon information and belief, Defendant Hur conducted Plaintiff Yi's interview on behalf of Evergreen Adult Daycare's general owner, Defendant Koo, and eventually employed by Defendants to work as Evergreen Adult Daycare's service staff.

179.     During Plaintiff Yi's employment, he worked under the direct supervision of Defendants Hur and Kang and general supervision of Defendant Koo.

180.     At Evergreen Adult Daycare, Plaintiff Yi's primary duties included, but were not limited to, driving customers from/to the adult daycare center, pharmacies, hospitals, and grocery stores, opening door for the customers, and assisting them getting in/out of Evergreen Adult

Daycare's company van, and preparing meals for the customers in the afternoon at Evergreen Adult Daycare Branch 3.

181.    Beginning approximately May 2020, Plaintiff Yi was also required to deliver lunch boxes to Evergreen Adult Daycare's customers at their residence.

182.    From December 16, 2019, to March 2020 and again, from around late May 2020, until October 4, 2021, Plaintiff Yi worked for Evergreen Adult Daycare at Branch 3.

183.    Although Evergreen Adult Daycare Branch 3's official "opening hour" started after 7:30 am from Monday through Friday, Plaintiff Yi was required to arrive early before its official "opening hour" at Branch 3 to provide car service for the customers by picking up Evergreen Adult Daycare's van and drive the customers to Branch 3 by its official "opening hour."

184.    Upon information and belief, Evergreen Adult Daycare had approximately 5 service staff to (primarily) provide the car service to the customers at Branch 3, in addition to performing other duties as general daycare service staff as needed.

185.    From December 16, 2019, to March 2020, Plaintiff Yi worked a schedule of Monday through Friday from approximately 5:30 am to 2:30 pm without any uninterrupted break. During this period, Plaintiff Yi worked the following schedule: Plaintiff Yi was required to arrive at Branch 3 around 5:30 am, pick up the van, and headed to Yonkers to drive approximately 10 customers to Branch 3 by around 7:30 am. When the customers arrived at the branch, Plaintiff Yi opened the door for the customers and assisted them to get out of the van to get into Branch 3. Thereafter, Plaintiff Yi was required to provide a 2nd-round car service to pick up the "local" customers who lived near Branch 3 until around 8:10 am. As soon as Plaintiff Yi arrived at Branch 3, he was required to help other service staff members with carrying delivered meals to the 2nd floor dining area until around 8:50 am. Then, Plaintiff Yi was allowed to eat with the customers

for 10-20 minutes while addressing the customers' and/or Defendant Kang's needs. Starting from around 9:00 am, Plaintiff Yi was required to primarily provide "car service" for Evergreen Adult Daycare's customers. Plaintiff Yi was required stand-by at Branch 3 until another service staff member received a customer's request at Branch 3 and arranged the car service with Plaintiff Yi. As soon as the service staff notified Plaintiff Yi of a customer's need, Plaintiff Yi drove the customer to the desired destination(s) such as hospitals, pharmacies, and/or grocery shops, waited for the customer outside, and drove the customer back to Branch 3 until around 11:40 am. Thereafter, Plaintiff Yi helped other service staff for serving lunch meals to the customers to the dining table(s), addressed their needs, waited for customers until they finish eating and playing bingo-games. From around 1:00 pm, Plaintiff Yi Plaintiff Yi continued to provide car service to Branch 3's customers to drive approximately 10 customers to their residence(s) located in Yonkers until around 2:30 pm. During this period, Plaintiff Yi worked approximately (9) hours per day and around (45) hours in total each week.

186.    From around the end of March 2020 until the beginning of May 2020, Defendants did not allow Plaintiff Yi to work at Branch 3 due to the Covid-closure.

187.    Starting from around end of May 2020 until around June 20, 2021, Defendants required Plaintiff Yi to assist other service staff members at Branch 3 to pack each of the customers' lunch in separate boxes and deliver the lunchbox to the customers' home. In the beginning of this period, Plaintiff Yi regularly worked (2) days per week on Tuesdays and Thursdays for a couple of months. Thereafter, Plaintiff Yi was required to work (1) additional day on Wednesday in every 3 weeks on average. During this period, Plaintiff Yi worked from around 6:30 am until 12:00 pm according to the following schedule: From 6:30 am to 8:30 am, Plaintiff Yi helped other service staff members pack the customers' lunch in separate boxes as soon as a

catering restaurant delivered the meal to Branch 3; from 8:30 am until 12:00 pm, Plaintiff Yi drove to Long Island area to deliver the lunch-boxes to Evergreen Adult Daycare's customers in 13 different locations. As such, Plaintiff Yi worked approximately (11) hours per week (if he worked (2) days per week) or around (16.5) hours per week (if he worked (3) days a week).

188.    From around June 21, 2021, to October 4, 2021, Defendants required Plaintiff Yi to resume his regular work as a service staff member at Branch 3, but still required him to deliver the lunchboxes to some customers who did not return to Branch 3 due to the pandemic. During this period, Plaintiff Yi worked his regular schedule of Monday through Friday but worked longer hours from approximately 5:30 am until around 3:30pm – 4:00pm to perform the additional lunch-box delivery service during his working hours. As such, Plaintiff Yi worked on average, (10.5) hours per day or approximately (52.5) hours in total per week during this period.

189.    Upon information and belief, Defendants equipped a time-recording machine at Branch 3 at some point during Plaintiff Yi's employment. However, Defendants did not require the employees to record their working hours, nor did they allow the employees to record their actual working hours even if they choose to do so. Specifically, Defendants never allowed Plaintiff Yi to record the actual number of hours he worked, nor did they provide access to Plaintiff Yi to record the time when he arrived at Branch 3 in the morning.

***Plaintiff Yi's Pay***

190.    From December 16, 2019, until before the start of the pandemic in late- March 2020, Plaintiff Yi's fixed weekly rate was essentially $557.69 per week and was paid $1,115.38 bi-weekly by check.

191.    For the initial period since Defendants required Plaintiff Yi to prepare meals for lunch-box delivery for (2) days per week, from approximately May 2020 to July 2020, Defendants

paid Plaintiff Yi $100.00 per day in cash on each day he formed the service or $200.00 per week on the last day of Plaintiff Yi's work week.

192.    From around August 2020 to December 2020, Plaintiff Yi's fixed daily rate of $100.00 was unchanged, but Defendants paid Plaintiff Yi $200.00 (if he worked (2) days per week) or $300.00 (if he worked (3) days per week) on every Thursday or bi-weekly in cash.

193.    From approximately January 2021 until around June 20, 2021, Defendants increased Plaintiff Yi's fixed daily date to $112.00 and paid Plaintiff Yi $224.00 (if he worked (2) days per week) or $336.00 (if he worked (3) days per week) bi-weekly by check.

194.    After Plaintiff Yi resumed to work at Branch 3 from approximately June 21, 2021 to October 4, 2021, Plaintiff Yi's fixed weekly rate was essentially $625.00 per week, and was paid $1,250.00 bi-weekly by check (except for the 1-2 occasions, Defendants paid him extra $50.00 on that pay week(s) specifically, Plaintiff Yi repetitively complained to Defendant Hur about his long working hours and Defendants' unwillingness to pay him all the hours he actually worked).

195.    Upon information and belief, Defendant Koo issued the paycheck on behalf of Evergreen Adult Daycare. Defendant Koo signed employees' paychecks, including Plaintiff Yi's, at Branch 2 and delivered the paychecks to the general manager(s) at Branch 3.

196.    Upon information and belief, Defendants Hur and Kang also issued Evergreen Daycare employees' paycheck, including Plaintiff Yi's, together with Defendant Koo.

197.    On 1-2 occasion(s), Defendant Hur (re-)issued Plaintiff Yi's paycheck to reflect the extra $50.00 payment on his bi-weekly compensation.

198.    Defendants calculated Plaintiff Yi's wages based on a fixed rate and essentially paid him below the NYS minimum wage rate while he was working as a full-time service staff member at Branch 3.

199.    Defendants did not give any notice to Plaintiff Yi in English, and in his primary language, of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

200.    Defendants did not provide Plaintiff Yi an accurate statement of wages, as required by NYLL 195§ (3).

201.    Defendants did not pay Plaintiff Yi one additional hour's pay at the basic minimum wage rate before allowance for each day Plaintiff Yi's spread of hours exceeded ten hours.

***Plaintiff Yi's Hostile Work Environment and Retaliation Claims***

202.    Evergreen Adult Daycare owns, operates, or controls an adult day care, which provides various types of senior services to the customers, through its Branches located in multiple regions in the State of New York and Hawaii. Evergreen Adult Daycare operates or operated at least 5 Branches in New York such as *Branch 1* located at 37-10 149th Place, Flushing, NY 11354 (former location) and 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 (new location); *Branch 2* located at 42-19 Bell Blvd., Bayside, NY 11361 (former location) and 144-72 Northern Blvd., 2nd Floor, Flushing, NY 11354 (new location); and *Branch 3* 150-12 Roosevelt Ave., Flushing, NY 11354, and oversees the general affairs of its Branches located in different regions within the New York State and Hawaii.

203.    Evergreen Adult Daycare and its Branches are integrated operation as all of the Evergreen Adult Daycare's Branches, including the New York Branches, are under the oversight of Evergreen Adult Daycare and operates its business under the same d/b/a name.

204. Upon information and belief, the directors of Evergreen Adult Daycare and its Branches made their personnel and other decisions in consultation with Individual Defendants. Specifically at Branch 3, Defendants Hur and Kang made their personnel and other decisions in consultation with Defendant Koo.

205. Upon information and belief, Defendants Hur, Kang, and Koo had supervisory hiring and firing authority over Plaintiff Yi and other Evergreen Adult Daycare's service staff.

206. Defendant Koo was known to Plaintiff Yi to be the "owner" of Evergreen Adult Daycare and all of its Branches, including Branch 3.

207. Defendant Koo was physically present at Branch 3 about 1 -3 days each week to oversee the general affairs of Branch 3's business and attend a staff-meeting.

208. Defendant Kang is known to Plaintiff Yi as a "shareholder" of Evergreen Adult Daycare and "director" at Evergreen Adult Daycare Branch 3.

209. Defendant Hur is known to Plaintiff Yi as a "director" of Evergreen Adult Daycare and "president and/or principal" at Evergreen Adult Daycare Branch 3.

210. While working at Branch 3, Plaintiff Yi was under the direct supervision of Defendants Hur and Kang and general supervision of Defendant Koo.

211. Thorough Plaintiff Yi's employment, Defendant Kang subjected Plaintiff Yi to bitter comment. Specifically for the last 2 months of his employment, Plaintiff Kang continuously pressured him to terminate his employment with Evergreen Adult Daycare and threatened him that she would "replace" him with younger service staff member who owned a minivan.

212. After Plaintiff Yi resumed his regular working schedule around June 21, 2021, Defendant Kang assigned him more tasks so that he worked longer hours.

213.    Defendant Kang requested Plaintiff Yi to take Evergreen Adult Daycare's company van and park near Plaintiff Yi's house to provide the car service to the customers as soon as he walked out of the house.

214.    Even if Defendant Kang allowed Plaintiff Yi to park the van near his house, she required Plaintiff Yi to send her a screen shot(s) reflecting the van's mileage on a daily basis because she needed to make sure that he did not use the van for his personal needs and add-on any mileage while he was keeping the van.

215.    Since Plaintiff Yi was required to park the van near his house and began work immediately when he left the house, Plaintiff Yi complained to Defendant Kang about his longer working hours and Defendants' unwillingness to pay for the actual hours he worked.

216.    Specifically, beginning August 2021, Defendant Kang told Plaintiff Yi to just be "quiet" and accept his compensation without complaint as if he started working from Branch 3's "official" opening hours until 2:00 pm, regardless of how many hours he worked.

217.    Whenever Plaintiff Yi had chance to record his working hours, Defendant Kang never allowed him to record the actual hours he worked. Instead, Defendant Kang specifically instructed Plaintiff Yi to write 2:00 pm as the end of his working-hours, although Defendants required him to work past that time.

218.    After Plaintiff Yi started complaining, Defendant Kang would not allow Plaintiff to take any uninterrupted break. Whenever Defendant Kang spotted Plaintiff Yi eating with customers in the morning, she ordered him to perform other tasks and/or pick up a customer in Jamaica, although he did not receive any notification from the service staff of the sudden car service arrangement.

219.     On many occasions, Defendant Kang yelled at Plaintiff Yi that he needed to **"just do whatever I told you *to do"*** and **"you work all day *or quit.*"**

220.     On some occasions, Defendant Kang told Plaintiff Yi that she had **at least 2 potential car service staff *who are younger than Plaintiff Yi and also owned a mini-van*** and **"*do whatever I asked you to do* [***working longer hours and performing additional tasks without making any complaints*] *or quit.*"**

221.     Right before the end of Plaintiff Yi's employment, Defendant Kang announced to him that Evergreen Adult Daycare decided to pay him only for the hours actively transporting customers and not for "stand-by time." Defendant Kang ordered Plaintiff Yi to stand-by at home (since Plaintiff Yi's house was a few blocks away from Branch 3) until the service staff notified him of the customer(s) arrangement(s).

222.     As such, Plaintiff Yi was forced to terminate his employment with Evergreen Adult Daycare on that day.

223.     Plaintiff Yi complained to Defendants Hur and Koo about Defendant Kang's hurtful comments and her unreasonable demands, but she continued to engage in the unlawful conduct and no one took any remedial measures to correct her harassing behavior.

224.     Defendant Koo was physically present at the Branch 3 at least 1-3 days each week, but he did not do anything to prevent Defendant Kang's harassing behaviors. Despite that Plaintiff Yi repeatedly complained to Defendant Hur while Defendant Koo was present at the branch, Defendant Hur, on behalf of Defendant Koo, advised Plaintiff Koo to consider Defendant Kang as a "crazy person" and be "understanding" of Defendant Kang's unreasonable conduct.

225.     Moreover, Defendant Evergreen Adult Daycare ratified and condoned the unlawful acts of its directors, officers, agents and/or managers.

226. Upon information and belief, Defendant Kang is still employed by Defendants.

227. Defendant Koo, at all relevant times, exercised operation control over Defendants' Evergreen Adult Daycare and its Branches, including Branch 3. For instance, Defendant Koo was regularly present at its Branches (i.e., for 1-3 days per week at Branch 3 to oversee the branch's business and participate in a staff-meeting), supervising Evergreen Adult Daycare's service staff, including Plaintiff Yi, and paid its employees.

### ***Plaintiff Yong Jin Jo ("Plaintiff Jo")***

228. Plaintiff Jo is a former employee of Defendants, primarily employed in performing the duties of service staff such as assisting customers with applying for Medicaid benefits, food stamps, addressing other issues with the application/renewal forms, driving customers from/to the adult daycare center, pharmacies, hospitals, grocery stores, and/or various social service entities, and arranging transportation to address customers' medical emergency. Additionally, Plaintiff Jo was also responsible for preparing/setting recreational items, arranging birthday parties, organizing tables and other amenities, and cleaning the adult day care center.

229. Plaintiff Jo did not work at his own convenience, having to report to work according to a schedule devised by Defendants. Furthermore, once scheduled for a shift, Plaintiff Jo did not come and go at his pleasure but rather was controlled by Defendants.

230. Plaintiff Jo is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Jo did not occupy what law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff Jo's employment for Defendants was physical labor.

231. Plaintiff Jo commences this action as a collective action under 29 U.S.C. § 216(b).

232. Plaintiff Jo regularly handled goods in interstate commerce, such as produce that was grown and harvested outside of the State of New York.

233.    Plaintiff Jo's work duties required neither discretion nor independent judgment.

234.    Throughout Plaintiff Jo's employment with Defendants, Plaintiff Jo regularly worked in excess of 40 hours per week.

***Plaintiff Jo's Work Schedule***

235.    Plaintiff Jo was employed by Defendants to work at Evergreen Adult Daycare's Branch 3 located at 150-12 Roosevelt Ave., Flushing, NY 11354 from on or around June 18, 2018, until June 30, 2021.

236.    Upon information and belief, Defendant's former manager and Defendant Kang conducted Plaintiff Jo's interview on behalf of Evergreen Adult Daycare's general owner, Defendant Koo, and eventually employed by Defendants to work as Evergreen Adult Daycare's service staff.

237.    During Plaintiff Jo's employment, he worked under the direct supervision of Defendants Hur and Kang and general supervision of Defendant Koo.

238.    At Evergreen Adult Daycare, Plaintiff Jo's primary duties included, but were not limited to, assisting customers with applying for Medicaid benefits, food stamps, addressing other issues with the application/renewal forms, making phone calls to the social service entities together with customers to serve as an interpreter, and interpreting customers' letters written in English to Korean whenever customers presented to Plaintiff Jo.

239.    However, as adult daycare service staff, Plaintiff Jo was also required to perform other duties, just like other service staff members performed, such as preparing/setting recreational items, arranging birthday parties, organizing tables and other amenities, cleaning the adult day care center, shopping for groceries and recreational items, driving customers to pharmacies, hospitals,

grocery stores, and/or various social service entities, and arranging transportation to address customers' medical emergency.

240. From on or around June 18, 2018, until June 30, 2021. Plaintiff Jo worked at Evergreen Adult Daycare Branch 3.

241. At the time Defendants employed Plaintiff Jo, he was supposed to work from 8:00 am until 4:00 pm from Monday through Friday at Branch 3 location, but Plaintiff Jo was required to work additional hours. On average, Plaintiff Jo worked additional (3) - (4) hours per day for as many days as (3) days per week, specifically when the service staff prepared for customers' birthday parties and holiday seasons. Plaintiff Jo's worked the following schedule(s):

  a. *"Regular <u>On-Site</u> Working Schedule"*: From Monday through Friday from approximately 8:00 am to 4:00 pm, Plaintiff Jo worked as a service staff member for 5 days a week for around (40) hours per week, without any interrupted break;

  b. "*Regular <u>Off-Site</u> Working Schedule*": Any days after 4:00 pm, Plaintiff Jo worked additional hours or minutes to answer the customers' phone calls and addressed their after-hour needs;

  c. "*Event-Season <u>On-Site</u> Working Schedule*": For a maximum of (3) days per week, Plaintiff Jo was required to spend approximately (3) – (4) additional hours at Branch 3 until 7:00 pm – 8:00 pm to prepare customers' birthday parties and holiday events.

242. During Plaintiff Jo's employment, Plaintiff Jo worked approximately (52) hours per week in total. (i.e., (40) hours on *"Regular <u>On-Site</u> Working Schedule"* + (few minutes to few

hours as needed) on "*Regular Off-Site Working Schedule*" + (12) maximum weekly hours [*or max. 4 hours per day for 3 days per week*] on "*Event-Season On-Site Working Schedule.*").

243. Defendants did not require Plaintiff Jo to record his working hours nor did they allow Plaintiff Jo to record his actual working hours.

**Plaintiff Jo's Pay**

244. In the beginning of Plaintiff Jo's employment in 2018, Defendants informed Plaintiff Jo that they would consider the initial 3-6 months of Plaintiff Jo's employment as "probation period," Defendants unilaterally determined the amount of Plaintiff Jo's bi-weekly compensation as if a $32,000 per year salaried employee. During this period, Plaintiff Jo's fixed weekly rate was essentially $615.38 per week and was paid approximately $1,230.76 bi-weekly, regardless of how many hours he actually worked. Although Plaintiff Jo was supposed to be in the "probation period" during this time, he performed the same job duties and worked on his regular schedule(s) which required him to work over 40 hours per week.

245. In or around 2019, Plaintiff Jo inquired Defendant Hur whether Defendants would consider changing Plaintiff Jo's tax form to W-2 beginning 2019. Thereafter, Defendants issued a W-2 to Plaintiff Jo, but they again unilaterally determined the amount of Plaintiff Jo's bi-weekly compensation, as if a $35,000 per year salaried employee. Upon information and belief, Plaintiff Jo's fixed weekly rate in 2019 was essentially around $673.08 per week and was paid approximately $1,346.15 bi-weekly, regardless of how many hours he actually worked.

246. In or around 2020, Defendants set Plaintiff Jo's compensation at a fixed bi-weekly rate and paid him $1,166.20 by check bi-weekly regardless of how many hours he actually worked.

247. In or around 2021, Defendants changed the amount of Plaintiff Jo's fixed bi-weekly rate and paid him $1,234.49 by check bi-weekly regardless of how many hours he actually worked.

248. During Plaintiff Jo's employment, Defendants paid him by check.

249. Upon information and belief, Defendant Koo issued the paycheck on behalf of Evergreen Adult Daycare. Defendant Koo signed employees' paychecks at Branch 2 and delivered the paychecks to the employees at different Branches through a corporate secretary and/or the general managers at each of Evergreen Adult Daycare's Branches.

250. Upon information and belief, Defendants Kang and Hur also issued Evergreen Daycare employees' paychecks, including Plaintiff Jo's, together with Defendant Koo.

251. During Plaintiff Jo's employment, he was required to drive his own car to provide transportation for Evergreen Adult Daycare's customers if none of the car service staff was available. Whenever the car service staff was unavailable or Defendants did not allow him to utilize a taxicab, Plaintiff Jo had to walk to his house, pick up his car, and drive the customer(s). Defendants utilized Plaintiff Jo's car as Evergreen Adult Daycare's transportation free-of-charge and failed to reimburse Plaintiff Jo.

252. Defendants calculated Plaintiff Jo's wages based on a fixed rate and generally paid him below the NYS minimum wage rate.

253. Defendants failed to pay Plaintiff Jo appropriate overtime compensation as required by federal and state laws when they required him to work in excess of 40 hours a week.

254. Defendants did not give accurate wage notice to Plaintiff Jo in English or in his primary language, of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

255. Defendants did not provide Plaintiff Jo an accurate statement of wages, as required by NYLL 195 § (3).

256.     Defendants did not pay Plaintiff Jo one additional hour of pay at the basic minimum wage rate before allowance for each day Plaintiff Jo's spread of hours exceeded ten hours.

### *Plaintiff Chul Zik Kim ("Plaintiff Chul Kim")*

257.     Plaintiff Chul Kim is a former employee of Defendants, primarily employed in performing the duties of service staff such as shopping groceries, fruits, snacks, birthday cakes, preparing and serving meals to the customers, cleaning the adult day care center, organizing tables, checking equipment and other amenities, and arranging a handyman if any of the equipment/amenities required repair. Additionally, Plaintiff Chul Kim was also responsible for, serving meals to the customers, picking-up customers' food items and small appliance(s) with car service staff, turning all the lights on (in the morning) and off (at night if no one stayed at the branch later than him), and checking the elevator to see whether he needed to arrange any repair service.

258.     Plaintiff Chul Kim did not work at his own convenience, having to report to work according to a schedule devised by Defendants. Furthermore, once scheduled for a shift, Plaintiff Chul Kim did not come and go at his pleasure but rather was controlled by Defendants.

259.     Plaintiff Chul Kim is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Chul Kim did not occupy what the law would characterize as "professional," "executive" or even "administrative" positions, as Plaintiff Chul Kim's employment for Defendants was physical labor.

260.     Plaintiff Chul Kim commences this action as a collective action under 29 U.S.C. § 216(b).

261.     Plaintiff Chul Kim regularly handled goods in interstate commerce, such as produce that was grown and harvested outside of the State of New York.

262. Plaintiff Chul Kim's work duties required neither discretion nor independent judgment.

263. Throughout Plaintiff Chul Kim's employment with Defendants, Plaintiff Chul Kim regularly worked in excess of 40 hours per week, except for the period Defendants required him to work at Branch 1 for 3 months on a temporary basis.

*Plaintiff Chul Kim's Work Schedule*

264. Plaintiff Chul Kim was employed by Defendants at Evergreen Adult Daycare's two Branches located at 37-10 149th Place, Flushing, NY 11354 ("Branch 1") and 150-12 Roosevelt Ave., Flushing, NY 11354 ("Branch 3") from in or around February 2017 until on or around March 20, 2020.

265. Upon information and belief, one of Evergreen Adult Daycare Branch 1's managers conducted Plaintiff Chul Kim's interview on behalf of its general owner, Defendant Koo, and eventually employed by Defendants to work as Evergreen Adult Daycare's service staff.

266. At the start of Plaintiff Chul Kim's employment, Plaintiff Chul Kim was informed that Evergreen Adult Daycare hired additional service staff to work at Branch 3. Because Branch 3 was not ready for its operation at the time of Plaintiff Chul Kim's hiring, Defendants required him to temporarily work at Branch 1 so that they could immediately assign service staff to Branch 3 as soon as it started operation.

267. From in or around February 2017 until around April 2017, Plaintiff Chul Kim worked at Defendants' adult day care center, Evergreen Adult Daycare, at its Branch 1 location at 37-10 149th Place, Flushing, NY 11354.

268.     During Plaintiff Chul Kim's employment at Branch 1, his duties included, but were not limited to, serving meals to the customers, organizing the tables, cleaning the daycare site, and assisting other service staff with performing their duties.

269.     While Plaintiff Chul Kim worked at Branch 1 for the temporary period, he worked a schedule of Monday through Friday from approximately 8:00 am to 4:00 pm without any uninterrupted break. During this period, Plaintiff Chul Kim worked (5) days per week and worked approximately (40) hours per week.

270.     Thereafter, Evergreen Adult Daycare's former general manager(s) at Branch 1 notified Plaintiff Chul Kim of Defendants decision that he was required to work at Branch 3 as it was finally ready for operation.  At that time, Plaintiff Chul Kim was informed that full-time service staff's "official" workhours would last from 8:00 am to 4:00 pm from Monday through Friday regardless of the location of the Evergreen Adult Daycare Branch, but Plaintiff Chul Kim was required to work additional hours at Branch 3.

271.     From in or around May 2017 until on or about March 20, 2020, Plaintiff Chul Kim worked at Defendants' new branch location, Branch 3, located at 150-12 Roosevelt Ave., Flushing, NY 11354.

272.     During Plaintiff Chul Kim's employment at Branch 3, the nature of Plaintiff Chul Kim's duties was unchanged, but he was required to perform additional duties for longer hours as the size of Branch 3 was much bigger than Branch 1. As service staff at the bigger Branch, Plaintiff Chul Kim was also responsible for shopping groceries, fruits, snacks, birthday cakes, checking equipment and other amenities, and arranging a handyman if any of the equipment/amenities required repair, turning all the lights on (in the morning) and off (at night if no one stayed at the branch later than him), checking the elevator to see whether he needed to arrange a repair service,

and picking-up customers' food items and small appliance(s) with other car service staff on certain occasions.

273.    At Branch 3, Plaintiff Chul Kim worked for (5) days a week from Monday through Friday from approximately 5:30 am until 4:00 pm, without any uninterrupted break. As such, Plaintiff Chul Kim worked on average, (10.5) hours per day or (52.2) hours per week from May 2017 until on or about March 20, 2020.

274.    During Plaintiff Chul Kim's employment, Defendants failed to record Plaintiff Chul Kim's actual working hours (if any) nor did they require him to record the hours.

***Plaintiff Chul Kim''s Pay***

275.    While Plaintiff Chul Kim was working at Branch 1 for a few months prior to transferring to Branch 3, Defendants set Plaintiff Chul Kim's hourly rate at $13.00 and paid him bi-weekly by check.

276.    After Plaintiff Chul Kim started working at Branch 3 in May 2017, Defendants set Plaintiff Chul Kim's compensation at a fixed weekly rate and paid him bi-weekly by check.

277.    From May 2017 to the end of 2018, Plaintiff Chul Kim's fixed weekly rate was $400.00, and Defendants paid him by check bi-weekly.

278.    From in or around 2019 to on or about March 20, 2020, Defendants set Plaintiff Chul Kim's fixed weekly rate at $600.00 and paid him ($400.00 by check and $200.00 in cash) bi-weekly.

279.    Upon information and belief, Defendant Koo issued the paycheck on behalf of Evergreen Adult Daycare. Defendant Koo signed employees' paychecks, including Plaintiff Chul Kim's, at Branch 2 and delivered his paycheck to Branch 3's former general manager or Defendant Hur at Branch 3.

280.     Defendant Hur handed Plaintiff Chul Kim's paycheck and the cash payment to Plaintiff Chul Kim at Branch 3 while he was working at the branch.

281.     Upon information and belief, Defendants Kang and Hur also issued Evergreen Daycare employees' paychecks, including Plaintiff Chul Kim's, together with Defendant Koo.

282.     Defendants calculated Plaintiff Chul Kim's wages based on a fixed rate and generally paid him below the NYS minimum wage rate while he was working at Branch 3.

283.     Defendants did not give any notice to Plaintiff Chul Kim in English or in his primary language of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

284.     Defendants did not provide Plaintiff Chul Kim an accurate statement of wages, as required by NYLL 195 § (3).

285.     Defendants did not pay Plaintiff Chul Kim one additional hour's pay at the basic minimum wage rate before allowance for each day Plaintiff Chul Kim's spread of hours exceeded ten hours.

### *Plaintiff Sam Hyun Kim ("Plaintiff Sam Kim")*

286.     Plaintiff Sam Kim is a former employee of Defendants, primarily employed in performing the duties of service staff such as driving customers from/to the adult daycare center, pharmacies, hospitals, and grocery stores, opening door for the customers, and assisting them to getting in/out of Evergreen Adult Daycare's company van. Additionally, Plaintiff Sam Kim was also responsible for preparing meals for the customers in the afternoon at Evergreen Adult Daycare center and delivering lunch boxes to the customers at their residence.

287. Plaintiff Sam Kim did not work at his own convenience, having to report to work according to a schedule devised by Defendants. Furthermore, once scheduled for a shift, Plaintiff Sam Kim did not come and go at his pleasure but rather was controlled by Defendants.

288. Plaintiff Sam Kim is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Sam Kim did not occupy what the law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff Sam Kim's employment for Defendants was physical labor.

289. Plaintiff Sam Kim commences this action as a collective action under 29 U.S.C. § 216(b).

290. Plaintiff Sam Kim regularly handled goods in interstate commerce, such as produce that was grown and harvested outside of the State of New York.

291. Plaintiff Sam Kim's work duties required neither discretion nor independent judgment.

292. Throughout Plaintiff Sam Kim's employment with Defendants, Plaintiff Sam Kim regularly worked in excess of 40 hours per week, except for the period he was required to perform the lunch box delivery for 2 days.

***Plaintiff Sam Kim's Work Schedule***

293. Plaintiff Sam Kim was employed by Defendants to work at Evergreen Adult Daycare's Branch 3 located at 150-12 Roosevelt Ave., Flushing, NY 11354 from approximately July 2019 until April 2021.

294. Upon information and belief, Defendant Hur conducted Plaintiff Sam Kim's interview on behalf of Evergreen Adult Daycare's general owner, Defendant Koo, and eventually employed by Defendants to work as Evergreen Adult Daycare's service staff.

295.     Upon information and belief, Defendant Kang was supposed to conduct Plaintiff Sam Kim's interview at the time of his hiring, but Defendant Hur did so on behalf of Defendants Kang and at Defendant Koo's direction. Although Defendant Kang was physically absent in the State at the time of Plaintiff Sam Kim's hiring, she actively participated in the operation of Evergreen Adult Daycare via remote means and closely supervised its service staff.

296.     During Plaintiff Sam Kim's employment, he worked under the direct supervision of Defendants Hur and Kang and general supervision of Defendant Koo.

297.     At Evergreen Adult Daycare, Plaintiff Sam Kim's primary duties included, but were not limited to, driving customers from/to the adult daycare center, pharmacies, hospitals, and grocery stores, opening door for the customers, and assisting them to getting in/out of Evergreen Adult Daycare's company van, and preparing meals for the customers in the afternoon at Evergreen Adult Daycare Branch 3.

298.     Since around the end of March 2021, Plaintiff Sam Kim was also required to deliver lunch boxes to Evergreen Adult Daycare's customers at their residence.

299.     From in or around July 2019 until April 2021, Plaintiff Sam Kim worked at Evergreen Adult Daycare Branch 3.

300.     Upon information and belief, Evergreen Adult Daycare Branch 3's official "opening hour" started after 7:30 am from Monday through Friday. However, Plaintiff Sam Kim was required to arrive early, before its official "opening hour," at Branch 3 to provide car service for the Branch 3's customers by picking up Evergreen Adult Daycare's van and driving the customers to Branch 3 by its official "opening hour."

301.     Upon information and belief, Evergreen Adult Daycare employed a few staff members to primarily provide car service to the customers, including Plaintiff Sam Kim, but all of

the Evergreen Adult Daycare's service staff's duties were interchangeable and performed the same duties as other service staff routinely.

302.     From in or around July 2019 to approximate March 21, 2021, Plaintiff Sam Kim worked a schedule of Monday through Friday from approximately 5:40 am to 2:00 pm without any uninterrupted break. During this period, Plaintiff Sam Kim worked the following schedule: Plaintiff Sam Kim was required to arrive at Branch 3 around 5:40 am, pick up the van, and head to Elmhurst and Corona areas to drive approximately 5 customers to Branch 3 by around 8:30 am. When the customers arrived at the branch, Plaintiff Sam Kim opened the door for the customers and assisted them to get out of the van to get into Branch 3. Then, Plaintiff Sam Kim was allowed to eat with the customers for 20-30 minutes while addressing the customers' needs. Starting from around 9:00 am until around 11:30 am, Plaintiff Sam Kim was required to primarily provide "car service" for Evergreen Adult Daycare's customers. Plaintiff Sam Kim was required stand-by at Branch 3 until any of the customers requested for car service. As soon any of the customer(s) needed transportation, Plaintiff Sam Kim drove the customer(s) to the desired designation(s) such as hospitals, pharmacies, and/or grocery shops, waited for the customer outside, and drove the customer(s) back to Branch 3.  As soon as Plaintiff Sam Kim returned to Branch 3, around 11:30 am, he was required to help other service staff members with preparing lunch for the customers and/or play bingo-games with the customers. As soon as the customers finished eating lunch, Plaintiff Sam Kim was required to provide a 2nd-round of car service drop offs to approximately 10-12 "local" customers to their residences primarily located in Kissena Blvd. and Northern Blvd until around 2:00 pm. During this period, Plaintiff Sam Kim worked approximately (8.4) hours per day and approximately (42) hours in total each week.

303.    Since around the end of March 2021 until April 2021, Defendants, through Defendant Kang, required Plaintiff Sam Kim to pick-up approximately 40-50 lunchboxes at Branch 3 and deliver them to Evergreen Adult Daycare's customers' residences. Plaintiff Sam Kim was able to perform the lunch-box delivery only for 2 days in April 2021 because Defendant Kang was not "happy" that Plaintiff Sam Kim did not seem familiar with the delivery locations despite living in that area for a long time.

304.    On the first day Plaintiff Sam Kim was required to perform the lunch-box delivery, he had to personally deliver lunch to the customers. However, on the second day, Plaintiff Sam Kim drove Defendant Kang to the customers' residences and waited for her in the car while she handed out the lunch box(es) to the individual customer(s). For the (2) days Plaintiff Sam Kim delivered the lunchboxes and drove Defendant Kang, he worked approximately (3) hours per day from between 9:00am -10:00am until around 12:30pm - 1:00pm.

305.    During Plaintiff Sam Kim's employment, Defendants failed to record Plaintiff Sam Kim's actual working hours (if any) nor did they require him to record the hours.

***Plaintiff Sam Kim's Pay***

306.    From in or around July 2019 until around the end of March 21, 2021, Defendants paid Plaintiff Sam Kim a fixed weekly rate around $510.00 by check.

307.    On the (2) days Defendants required Plaintiff Sam Kim to deliver lunchboxes and drive Defendant Kang between end of March 2021 and April 2021, Defendants set $100.00 as Plaintiff Sam Kim's fixed daily rate and paid him $200.00 in cash on the 2nd day of his work.

308.    Upon information and belief, Defendant Koo issued the paycheck on behalf of Evergreen Adult Daycare. Defendant Koo signed employees' paychecks, including Plaintiff Sam Kim's, at Branch 2 and delivered his paycheck to Defendant Hur at Branch 3.

309. Defendant Hur handed Plaintiff Sam Kim the paycheck, and Defendant Kang paid the cash payment to Plaintiff Sam Kim at Branch 3.

310. Upon information and belief, Defendants Kang and Hur also issued Evergreen Daycare employees' paycheck, including Plaintiff Sam Kim's, together with Defendant Koo.

311. Defendants calculated Plaintiff Sam's wages based on a fixed rate and below the NYS minimum wage rate, except for the (2) days Plaintiff Sam Kim delivered the lunch boxes and drove Defendant Kang.

312. Defendants did not give any notice to Plaintiff Sam Kim in English or his primary language of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

313. Defendants did not provide Plaintiff Sam Kim an accurate statement of wages, as required by NYLL 195§ (3).

314. Defendants did not pay Plaintiff Sam Kim one additional hour's pay at the basic minimum wage rate before allowance for each day Plaintiff Sam Kim's spread of hours exceeded ten hours.

*Defendants' General Employment Practices*

315. Defendants regularly require Plaintiffs to work in excess of forty (40) hours per week without paying them proper overtime wages or spread of hours compensation.

316. Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

317. By employing this practice, Defendants avoided paying Plaintiffs at the overtime rate of time and a half for most or all of their hours worked in excess of forty (40) hours per week.

318. Defendants failed to post required wage and hour posters and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

319. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

320. Defendants did not provide Plaintiffs, and similarly situated employees, with the wage statements and annual pay notices required by NYLL § § 195(1) and 195(3).

321. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as require by NYLL § 195(3).

322. Defendants failed to provide Plaintiffs and other employees, at the time of hiring a statement in English and the employee's primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing

business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as require by New York Labor Law § 195(1).

## COLLECTIVE ACTION ALLEGATIONS

323.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage to Plaintiffs or other similarly situated employees.

324.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

325.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and other similarly situated employees.

326.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants as daycare service staff members at each of their branch locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive minimum wages, spread-of-hours pay, and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members" or "Evergreen Adult Daycare Service Staff"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

327. Upon information and belief, the Collective Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action Members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. § 216(b).

328. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

329. This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this collective that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

330. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the

members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

331.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a.   Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b.   Whether the Defendants failed to pay the Collective Action Members the minimum wage in violation of the NYLL and the regulations promulgated thereunder;

c.   Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

d.   Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

e.   Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

f.   Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

g.   Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

h.  Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

332.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

333.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

### STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

334.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

335.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

336.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

337.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

338. At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. § § 201, et seq., including 29 U.S.C. § § 207(a)(1) and 215(a).

339. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

340. Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

341. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action Members.

**COUNT II**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiffs]**

342. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

343. At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law § § 2 and 651.

344.     Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

345.     Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked.

**COUNT III**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiffs]**

346.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

347.     Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

348.     Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the NYLL.

349.     Defendants' failure to pay Plaintiffs and the FLSA Collective was not in good faith.

**COUNT IV**
**[Violation of New York Labor Law—Spread of Hour Pay**
**Brought on behalf of Plaintiffs Hee Kim, Yi, Chul Kim, and Jo]**

350.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

351.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL § § 190, et seq., and § § 650, et seq., and New York State Department of Labor regulations § 146-1.6.

352.     Defendants' failure to pay Plaintiffs Hee Kim, Yi, Chul Kim, and Jo' and FLSA Collective spread-of-hours pay was not in good faith.

## COUNT V
**[Violation of the Fair Labor Standards Act —Failure Reimburse for Expenses relating to Tools of the Trade on behalf of Plaintiff Jo]**

353.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

354.     Plaintiff Jo on behalf of himself and all other similarly situated Collective Action Members and members of the Class repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

355.     At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiff Jo for expenses incurred in relation to tools of the trade used by Plaintiff Jo in order to provide transportation for Evergreen Adult Daycare's customers.

356.     Defendants failed to pay Plaintiff Jo for expenses incurred in relation to tools of the trade, which includes but is not limited to gas, and other costs related to the maintenance of the car. At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiff Jo for expenses incurred in relation to tools of the trade used by Plaintiff Jo in order to provide transportation for Evergreen Adult Daycare's customers.

357.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to reimburse Plaintiff Jo for expenses incurred in relation to tools of the trade used by Plaintiff Jo when Defendants knew or should have known such was due.

## COUNT VI
**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on behalf of Plaintiffs]**

358.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

359.     The Defendants failed to furnish to the Plaintiffs at the time of hiring a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL, § 195(1).

360.     Due to the defendants' violation of the NYLL, § 195(1) each Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-b).

### COUNT VII
### [Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on behalf of Plaintiffs]

361.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

362.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 198-1(d).

363.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiffs and did not provide the pay stub on or

after each Plaintiffs' payday.

364.    Due to Defendants' violations of New York Labor Law, Plaintiffs is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for Plaintiffs for costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law § 198(1-d).

**COUNT VIII**
**[Violation of the New York State Human Rights Law - Hostile Work Environment**
**Brought by Plaintiffs Hee Kim and Yi]**

365.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

366.    Plaintiffs Hee Kim and Yi are qualified to work as an employee for Defendants and they have satisfactorily performed the duties required by the position they held at Evergreen Adult Daycare.

367.    Plaintiff Hee Kim was subjected to continuous barrage of unfounded and defamatory accusations of criminal conduct by Defendant Kang, i.e. threatening to report Plaintiff to law enforcement falsely alleging she had embezzled money, after refusing to fraudulently create records of customer's attendance at the facility.  *See paragraphs 146 -150, 163-164.*

368.    Additionally, Defendant Kang subjected Plaintiff Hee Kim to repeated insults and degrading comments to humiliate Plaintiff Hee Kim in front of coworkers and customers by making baseless personal attacks on Plaintiff Hee Kim's appearance, competency, and work ethic. *See paragraphs 151-162.*

369.    Plaintiff Yi was repeatedly threatened with replacement by a younger employee and ever pending termination unless he fully complied with Defendant Kang's vague, ambiguous, and ever-changing commands.  *See paragraphs 211-212, 215-221.*

370.     Defendants acknowledged Defendant Kang's outrageous and hostile conduct but instructed Plaintiffs Hee Kim and Yi to ignore it and just consider Defendant Kang a "manic-depression" patient or "crazy person." *See paragraphs 165-166, 223-224*.

371.     Defendants knowingly allowed the hostile work environment to persist without any attempt to intervene or correct the supervisor's conduct. *See paragraphs 165-167, 169, 223- 225, 227.*

372.     Upon information and belief, the shareholder(s) and director(s) of Evergreen Adult Daycare and president(s) and/or principal(s) of its Branches made their personnel and other decisions in consultation with Defendant Koo, who served as the "owner," Founder, and/or CEO of Evergreen Adult Daycare.

373.     Individual Defendants served as a Founder/CEO, shareholder, and director of Evergreen Adult Daycare as well as "owner," director, and principal at its Branches.

374.     Defendant Evergreen Adult Daycare failed to take adequate measures to remedy the harassment suffered by Plaintiffs Hee Kim and Yi. Instead, Defendant Evergreen Adult Daycare required the Plaintiffs to perform increased duties and work longer hours to satisfy Defendant Kang's demands at Branch 3.

375.     Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the New York State Human Rights Law (NYSHRL). N.Y. Executive Law Art. 15 §§ 290-301.

376.     As a direct and proximate result of Defendants' unlawful employment practices, Plaintiffs Hee Kim and Yi suffered the indignity of harassment, the invasion of their rights to be free from harassment which have manifested in emotional distress, as well as physical distress as to Plaintiff Hee Kim.

377.     As a further direct proximate result of Defendants' unlawful employment practices, Plaintiffs Hee Kim and Yi suffered extreme mental anguish, outrage, severe anxiety, painful embarrassment among their friends and co-workers, and the loss of enjoyment of the ordinary pleasures of everyday life.

378.     Defendants' conduct was done in conscious disregard of Plaintiffs Hee Kim and Yi's rights.

379.     Plaintiffs Hee Kim and Yi therefore seek compensatory damages, emotional and physical damages (as to Plaintiff Hee Kim), reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

**COUNT IX**
**[Violation of the New York City Human Rights Law - Hostile Work Environment**
**Brought by Plaintiffs Hee Kim and Yi]**

380.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

381.     Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the NYCHRL.  N.Y.C. Admin. Code Title 8.

382.     Plaintiffs Hee Kim and Yi are qualified to work as an employee for Defendants and they have satisfactorily performed the duties required by the position they held at Evergreen Adult Daycare.

383.     Plaintiff Hee Kim was subjected to continuous barrage of unfounded and defamatory accusations of criminal conduct by Defendant Kang, i.e. threatening to report Plaintiff Hee Kim to law enforcement falsely alleging she had embezzled money, after refusing to fraudulently create records of customer's attendance at the facility.  *See paragraphs 146 -150, 163-*

*164.*

384.     Additionally, Defendant Kang subjected Plaintiff Hee Kim to repeated insults and degrading comments to humiliate Plaintiff Hee Kim in front of coworkers and customers by making baseless personal attacks on Plaintiff Hee Kim's appearance, competency, and work ethic. *See paragraphs 151-156.*

385.     Plaintiff Yi was repeatedly threatened with replacement by a younger employee and ever pending termination unless he fully complied with Defendant Kang's vague, ambiguous, and ever-changing commands. *See paragraphs 211-212, 215-221.*

386.     Defendants acknowledged Defendant Kang's outrageous and hostile conduct but instructed Plaintiff Hee Kim and Yi to ignore it and just consider Defendant Kang a "manic-depression" patient or crazy person. *See paragraphs 165-166, 223-224*

387.     Defendants knowingly allowed the hostile work environment to persist without any attempt to intervene or correct the supervisor's conduct.  *See paragraphs 165-167, 169, 223- 225, 227.*

388.     Upon information and belief, the shareholder(s) and director(s) of Evergreen Adult Daycare and president(s) and/or principal(s) of its Branches made their personnel and other decisions in consultation with Defendant Koo, who served as the "owner," Founder, and/or CEO of Evergreen Adult Daycare.

389.     Individual Defendants served as a Founder/CEO, shareholder, and director of Evergreen Adult Daycare as well as "owner," director, and principal at its Branches.

390.     Defendant Evergreen Adult Daycare failed to take adequate measures to remedy the harassment suffered by Plaintiffs Hee Kim and Yi. Instead, Defendant Evergreen Adult Daycare further required the Plaintiffs to perform increased duties and work longer hours to satisfy

Defendant Kang's demands at Branch 3.

391.     Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the NYCHRL.

392.     As a direct and proximate result of Defendants' unlawful employment practices, Plaintiffs Hee Kim and Yi suffered the indignity of harassment, the invasion of their rights to be free from harassment which have manifested in emotional distress, as well as physical distress as to Plaintiff Hee Kim.

393.     As a further direct proximate result of Defendants' unlawful employment practices, Plaintiffs Hee Kim and Yi suffered extreme mental anguish, outrage severe anxiety, painful embarrassment among their friends and co-workers, and the loss of enjoyment of the ordinary pleasures of everyday life.

394.     Defendants' conduct was done in conscious disregard of Plaintiffs Hee Kim and Yi's rights.

395.     Plaintiffs Hee Kim and Yi therefore seek compensatory damages, emotional and physical damages (as to Plaintiff Hee Kim), reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

### COUNT X
### [Violation of the New York Labor Law - Retaliation
### Brought by Plaintiffs Hee Kim and Yi]

396.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

397.     NYLL § 215 prohibits an employer from terminating or disciplining an employee because "such employee has made a complaint to his or her employer, or to the commissioner or

his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

398.     After complaining of not receiving proper wages and overtime pay, Plaintiff Hee Kim was subjected to continuous barrage of unfounded and defamatory accusations of criminal conduct by Defendant Kang, i.e. threatening to report Plaintiff Hee Kim to law enforcement falsely alleging she had embezzled money, after refusing to fraudulently create records of customer's attendance at the facility. *See paragraphs 146 -150, 163-165.*

399.     Additionally, Defendant Kang subjected Plaintiff Hee Kim to repeated insults and degrading comments to humiliate Plaintiff Hee Kim in front of coworkers and customers by making baseless personal attacks on Plaintiff Hee Kim's appearance, competency, and work ethic. *See paragraphs 151-162.*

400.     After complaining of not receiving proper wages and overtime pay, Plaintiff Yi was repeatedly threatened with replacement by a younger employee and ever pending termination unless he fully complied with Defendant Kang's vague, ambiguous, and ever-changing commands. *See paragraphs 211-212, 215-223.*

401.     Defendants acknowledged Defendant Kang's outrageous and retaliatory conduct but instructed Plaintiffs Hee Kim and Yi to ignore it and just consider Defendant Kang a "manic-depression" patient or crazy person. *See paragraphs 165-166, 223-224.*

402.     All which culminated in the constructive discharge of Plaintiff Hee Kim and Yi from employment due to the continuous harassing and retaliatory conduct of Defendants.

403.     Defendants knowingly allowed the conduct to persist without any attempt to intervene or correct the supervisor's conduct.

404.    In committing the above-mentioned retaliatory acts, Defendants forced Plaintiffs Hee Kim and Yi's discharge, and retaliated against Plaintiffs Hee Kim and Yi for making complaints that Defendants violated the NYLL.

405.    As a direct and proximate result of Defendants unlawful conduct, as set forth herein, Plaintiffs Hee Kim and Yi sustained damages and seek recovery for retaliation in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 215 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## COUNT XI
### [Violation of New York State Law - Defamation
### Brought by Plaintiff Hee Kim]

406.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

407.    Under New York law, the elements of a defamation claim are:(1) a false statement; (2) published to a third party without privilege or authorization; (3) with fault amounting to at least negligence; and, (4) that caused special harm or defamation per se.

408.    While Plaintiff Hee Kim was working for Defendants at Branch 3, Defendant Kang subjected Plaintiff Hee Kim to wrongful accusation of stealing Evergreen Adult Daycare's money and customers' contact information after Plaintiff Hee Kim refused to forge the missing customers' "attendance sheet" the way Defendant Kang requested.

409.    Since Branch 3 had only around 15 service staff members to serve approximately 250 customers, Plaintiff Hee Kim was required to arrange customers' transportation with a third-party company whenever there were no staff members to provide the car service. When Plaintiff Hee Kim arranged transportation with a third-party company, she was required to record the details

of the service, such as the amount of the transportation cost, and submitted to Defendants on weekly or bi-weekly basis.

410.     Defendant Hur confirmed the amount of the transportation cost, and Defendant Kang authorized payment on behalf of Evergreen Adult Daycare. Although Defendant Kang was the one who controlled the funds used for the car services, she accused Plaintiff Hee Kim of stealing money in front of other service staff and Evergreen Adult Daycare's customers without any basis, other than to harass Plaintiff Hee Kim.

411.     Defendants published false statements to a third party without privilege or authorization. Defendant Kang, a shareholder of Defendant-employer and specifically the director at Defendant-employer's Branch 3, defamed Plaintiff Hee Kim when she proceeded to state that Plaintiff Hee Kim stole Evergreen Adult Daycare's money, "protected health information," and the clients' contact lists at her place of employment causing special harm and/or defamation per se.

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA collective members, respectfully requests that this court enter a judgment providing the following relief:

a)     Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b)     Certification of this case as a collective action pursuant to FLSA;

c)     Issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members

of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. §216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      declaring Defendants violated the FLSA and the NYLL, as well as the New York Executive Law and the New York City Human Rights Law as to Plaintiffs Hee Kim and Yi;

f)      granting judgment to Plaintiffs Hee Kim and Yi on their NYSHRL claims and awarding Plaintiffs Hee Kim and Yi appropriate damages and fines and penalties as provided for by statute;

g)       granting judgment to Plaintiffs Hee Kim and Yi on their NYCHRL claims and awarding Plaintiffs Hee Kim and Yi appropriate compensatory and punitive damages as provided for by statute;

h)      granting judgment to Plaintiff Hee Kim on her defamation claim and awarding Plaintiff Hee Kim appropriate compensatory and punitive damages as provided for by New York law;

i)      permanently enjoining Defendants from further violations of the FLSA, NYLL, NYSHRL, and NYCHRL;

j)      An injunction against Evergreen Adult Daycare, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

k)      An award of unpaid wages and overtime compensation due to Plaintiffs under the

FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of one hundred percent under NYLL §§198 et seq., §663 et seq, costs, reasonable attorney fees, and interest;

l)      An award of unpaid "spread of hours" premium due under the New York Labor Law;

m)      An award of unpaid expenses relating to tools of the trade due to Plaintiff Jo under the FLSA;

n)      An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

o)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

p)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wages, "spread of hours" premium, and overtime compensation pursuant to New York Labor Law;

q)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

r)      The cost and disbursements of this action;

s)      An award of prejudgment and post-judgment fees;

t)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and,

u)      Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York             **SEO LAW GROUP, PLLC**
       January 30, 2022

                           By:    /s/ Diana Seo
                                  Diana Seo, Esq.
                                  136-68 Roosevelt Ave., Suite 726
                                  Flushing, New York 11354
                                  Telephone: (718) 500-3340
                                  Email: diana@seolawgroup.com
                                  *Attorneys for Plaintiffs*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

To: JAMES KOO, YANGIM KANG, and BEN HUR

      PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of EVERGREEN ADULT DAYCARE IN NY INC for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      Dated: January 30, 2022

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

To: JAMES KOO, YANGIM KANG, and BEN HUR

  PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of EVERGREEN ADULT DAYCARE IN FLUSHING INC for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

  Dated: January 30, 2022

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

To: JAMES KOO, YANGIM KANG, and BEN HUR

      PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of EVERGREEN SENIOR SERVICES INC for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      Dated: January 30, 2022

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

To: JAMES KOO, YANGIM KANG, and BEN HUR

   PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of EVERGREEN ADULT DAYCARE CENTER INC for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

   Dated: January 30, 2022

## DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:

    EVERGREEN ADULT DAYCARE IN NY INC
37-10 149th Place
Flushing, NY 11354

    EVERGREEN ADULT DAYCARE IN NY INC
42-19 Bell Blvd.
Bayside, NY 11361

    EVERGREEN ADULT DAYCARE IN NY INC
150-12 Roosevelt Ave.
Flushing, NY 11354

    EVERGREEN ADULT DAYCARE IN NY INC
144-72 Northern Blvd., 2nd Floor
Flushing, NY 11354

    PLEASE TAKE NOTICE, that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

    To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

    HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

    Dated: January 30, 2022

## DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:

EVERGREEN ADULT DAYCARE IN FLUSHING INC
37-10 149th Place
Flushing, NY 11354

EVERGREEN ADULT DAYCARE IN FLUSHING INC
42-19 Bell Blvd.
Bayside, NY 11361

EVERGREEN ADULT DAYCARE IN FLUSHING INC
150-12 Roosevelt Ave.
Flushing, NY 11354

EVERGREEN ADULT DAYCARE IN FLUSHING INC
144-72 Northern Blvd., 2nd Floor
Flushing, NY 11354

PLEASE TAKE NOTICE, that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

Dated: January 30, 2022

## DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:

EVERGREEN SENIOR SERVICES INC
37-10 149th Place
Flushing, NY 11354

EVERGREEN SENIOR SERVICES INC
42-19 Bell Blvd.
Bayside, NY 11361

EVERGREEN SENIOR SERVICES INC
150-12 Roosevelt Ave.
Flushing, NY 11354

EVERGREEN SENIOR SERVICES INC
144-72 Northern Blvd., 2nd Floor
Flushing, NY 11354

PLEASE TAKE NOTICE, that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

Dated: January 30, 2022

**DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:

EVERGREEN ADULT DAYCARE CENTER INC
37-10 149th Place
Flushing, NY 11354

EVERGREEN ADULT DAYCARE CENTER INC
42-19 Bell Blvd.
Bayside, NY 11361

EVERGREEN ADULT DAYCARE CENTER INC
150-12 Roosevelt Ave.
Flushing, NY 11354

EVERGREEN ADULT DAYCARE CENTER INC
144-72 Northern Blvd., 2nd Floor
Flushing, NY 11354

PLEASE TAKE NOTICE, that HEE RYANG KIM, KANG H. YI, CHUL ZIK KIM, YONG JIN JO, and SAM HYUN KIM, and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

Dated: January 30, 2022

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: January 30, 2022

**EXHIBIT 1**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Evergreen Adult Day care i and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Hee Ryang Kim
Full Legal Name (Print)

Signature

12/4/2021
Date

**EXHIBIT 2**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ever Green day care in n.y, inc (adult)
and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that
I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

KANG. HYUB YI
Full Legal Name (Print)

Signature

04/12/21
Date

**EXHIBIT 3**

**CONSENT TO SUE
UNDER FEDERAL FAIR LABOR STANDARDS ACT**

      I am an employee currently or formerly employed by <u>Evergreen Adult Daycare Center</u> and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

<u> Chul Z Kim     </u>
Full Legal Name (Print)

_____
Signature

<u>01/13/2022</u>
Date

**EXHIBIT 4**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

      I am an employee currently or formerly employed by <u>Evergreen Adult Daycare Center</u> and/or related entities. I consent to be a plaintiff in a action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.


Yong Jin Jo
_____
Full Legal Name (Print)


_____
Signature


12/28/2021
_____
Date

**EXHIBIT 5**

## CONSENT TO SUE
## UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by <u>Evergreen Adult Daycare Center</u> and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

KIM SAN HYUN

Full Legal Name (Print)

Signature

1/24/22

Date