UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
**HEE RYANG KIM**, **KANG H. YI**, **CHUL ZIK KIM**, and **SAM HYUN KIM**, individually and on behalf of all other employees similarly situated,
:
:
: **MEMORANDUM DECISION AND ORDER**
Plaintiffs,
:
: 22-CV-548 (AMD) (CLP)
– against –
:
:
**EVERGREEN ADULT DAY CARE IN NY INC.**, et al,
:
:
Defendants.
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On January 30, 2020, the plaintiffs Hee Ryang Kim ("Hee Kim"), Kang H. Yi ("Yi"), Chul Zik Kim ("Chul Kim"), and Sam Hyun Kim ("Sam Kim")[1] brought this action alleging that their former employers—Evergreen Adult Daycare in NY, Inc., Evergreen Adult Daycare in Flushing, Inc., Evergreen Senior Services, Inc., Evergreen Adult Daycare Center Inc., James Koo, Yangim Kang, and Ben Hur (together, "defendants" or "Evergreen Adult Daycare")—violated their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq*, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (ECF No. 1.) On June 23, 2023, the defendants moved to stay the action and compel arbitration of Yi,

---

[1] The complaint also names Yong Jin Jo as a plaintiff. However, on August 10, 2023, Jo and the defendants filed a stipulation of dismissal, dismissing Jo's claims in their entirety and terminating Jo from the action. (ECF No. 26.)

The plaintiffs also bring the FLSA overtime claim and the NYLL overtime, minimum wage, spread of hours, and wage notice claims "on behalf of all other and former non-exempt employees who have been or were employed by the [d]efendants as daycare service staff members at each of their branch locations for up to the last three (3) years." (ECF No. 1 ¶ 326; *see id.* ¶¶ 324–26, 331.)

Chul Kim, and Sam Kim's claims because those plaintiffs signed employment agreements that require arbitration of any employment-related claims. (ECF No. 23.)[2] For the reasons explained below, the defendants' motion is granted. The action is stayed pending arbitration of Yi, Chul Kim, and Sam Kim's claims.

## BACKGROUND[3]

The plaintiffs[4] worked at Evergreen Adult Daycare at different times: from approximately December 16, 2019 to October 4, 2021 (Yi), February 2017 to March 2020 (Chul Kim), and July 2019 to April 2021 (Sam Kim). (ECF No. 1 ¶¶ 8, 16, 20, 28.) As "service staff employees," the plaintiffs provided "various types of senior care services" to Evergreen's customers; for example, they "prepar[ed] meals and snacks," "[drove] customers" to and from the adult daycare center and on errands, "arrang[ed] birthday parties" and other recreational events, "offer[ed] music classes," "assist[ed] customers with applying for Medicaid benefits [and] food stamps," and "arrang[ed] other transportation to fulfill the customers' other personal needs." (*Id.* ¶¶ 5, 8.)

---

[2] The cover page of the defendants' memorandum of law refers to the defendants' "motion to dismiss for lack of personal jurisdiction and improper venue" (ECF No. 23-1), but the defendants do not move for dismissal in the memorandum. The Court disregards the memorandum cover page's description and considers the defendants' submission as a motion to stay and compel arbitration, as their notice of motion states. (ECF No. 23 at 1.)

[3] The Court considers documents outside of the pleadings, including documents attached to the parties' motion briefs, for purposes of deciding a motion to compel arbitration. *See Faggiano v. CVS Pharm., Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017) (citing *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 U.S. Dist. LEXIS 54588, 2006 WL 2265041, at *10 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.").

[4] The defendants do not move to compel arbitration of the plaintiff Hee Kim's claims, or the claims of the purported class. (*See* ECF No. 23 at 1.) Accordingly, the Court uses "the plaintiffs" to refer only to Yi, Chul Kim, and Sam Kim.

The plaintiffs allege that the defendants did not pay them overtime wages at any point during their employment, in violation of the FLSA and the NYLL. (*Id.* ¶¶ 335–41, 347–49.) The plaintiffs also allege that the defendants did not pay them the minimum wage (*id.* ¶¶ 343–45), provide them with a notice of "the rate or rates of [their] pay and [the] basis thereof" and other required information at the time of their hire (*id.* ¶¶ 359–60), or give them pay stubs at any time during their employment (*id.* ¶¶ 362–64), all in violation of the NYLL. Additionally, Yi and Chul Kim allege that the defendants did not pay them spread-of-hour wages as required by the NYLL. (*Id.* ¶¶ 351–52.) Yi also alleges that the defendants subjected him to a hostile work environment, in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (*id.* ¶¶ 366–95), and retaliated against him in violation of the NYLL (*id.* ¶¶ 397–405).

The defendants contend that each plaintiff signed an agreement ("Employment Agreement") at or near the beginning of their employment with the defendants. (ECF No. 23-2 at 1.) Each Employment Agreement includes an identical "[m]andatory [a]rbitration" provision, which reads:

> 10.1 Arbitration Requirement. Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(ECF No. 23-5 at 10 ("Yi Agreement"); *see also* ECF No. 23-9 at 10 ("Chul Kim Agreement"); ECF No. 23-13 at 10 ("Sam Kim Agreement").) The plaintiffs contend that they "were only given 1-3 single pages to sign" and "were never provided with the purported agreement[s]" in full. (ECF No. 24 at 6; *see* ECF Nos. 24-1 ¶¶ 2–3, 24-2 ¶¶ 2–3, 24-3 ¶¶ 2–3.) Moreover, the Employment Agreements were written in English; the plaintiffs, who "barely speak and

3

understand English," maintain that no one explained "the terms of the [agreements]" to them, so they "never knew that they were entering into an employment agreement[ or] an agreement to arbitrate." (ECF No. 24 at 2, 6.) Instead, the plaintiffs contend, the defendant Ben Hur "refus[ed] to explain to them what they were signing, telling them that the documents [were] not important[] and not to worry about them." (*Id.* at 2.)

The defendants maintain that the plaintiffs received the Employment Agreements and signed them in front of Hur. (ECF No. 25 at 4–5.) In his affidavit, Hur states that he gave the Agreements to the plaintiffs, who were "not forced or otherwise influenced by anyone to sign the[] documents or to sign immediately;" instead, the plaintiffs "voluntarily signed" the Agreements "without requesting information or explanation about any of the documents." (ECF No. 25-1 ¶¶ 5–7.) Hur also states that he "made no comments about the documents." (*Id.* ¶ 9.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") covers arbitration provisions contained in employment contracts and arbitration agreements, including those here. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004). The FAA provides that arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and establishes a "liberal federal policy favoring arbitration agreements," *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").

A court considering whether all or part of an action should be submitted to arbitration under the FAA "must first decide whether the parties agreed to arbitrate." *Zachman v. Hudson*

4

*Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). If a court concludes that the parties did so agree, it must then determine "(1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.*

In making this determination, the court considers "all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002), and "draws all reasonable inferences in favor of the nonmoving party," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). This standard is "similar to that applicable for a motion for summary judgment." *Id.* (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).

## DISCUSSION

The plaintiffs argue that the parties did not agree to arbitrate. "The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate," so the Court considers that question first. *Doctor's Assocs. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)).[5]

### I. The Parties Agreed to Arbitrate

The Court looks to state contract law to determine whether the parties agreed to arbitrate. *Nicosia*, 834 F.3d at 231; *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019). New York law, which governs the Employment Agreements, places "the burden of

---

[5] The plaintiffs make this argument "[s]trictly in the [a]lternative." (ECF No. 24 at 5.)

5

proving that a valid arbitration agreement exists" on "the party seeking arbitration." *Solis v. ZEP LLC*, No. 19-CV-4230, 2020 U.S. Dist. LEXIS 50797, at *10 (S.D.N.Y. Mar. 24, 2020) (citations omitted). Like other contracts, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In support of their motion, the defendants submitted copies of the Employment Agreements, which the plaintiffs also attached to their opposition. (*See* ECF Nos. 23-5, 23-9, 23-13; *see also* ECF No. 24-4 (describing the attachments as "employment agreement[s] with [the plaintiffs'] name on it").) The Employment Agreements bear the plaintiffs' signatures on the last page, below contractual language stating that "the parties below"—the plaintiffs and Hur—"read and reviewed this entire contractual agreement" "with [their] complete knowledge and understanding" and "freely and voluntarily execute[d]" the contract. (*See, e.g.*, ECF No. 23-5 at 11.) The signatures, which are objective manifestations of the plaintiffs' assent to the contract's terms, match the plaintiffs' signatures on the affidavits they submitted with their opposition (*see* ECF Nos. 24-1, 24-2, 24-3) as well as their signatures on other employment documents that the defendants submitted (*see* ECF Nos. 23-8, 23-12, 23-16). The filed copies also have two or three dots in the upper lefthand corner, suggesting that all pages of each Agreement were previously stapled together. (*See* ECF Nos. 23-5, 23-9, 23-13; *see also* ECF No. 25-1 ¶¶ 3–4 (stating that the Employment Agreements were stapled).)

The plaintiffs do not dispute that the Employment Agreements include arbitration provisions. (*See* ECF No. 24 at 4.) They contend, however, that those provisions should be "declared null and void" because "[t]here [was] no meeting of the minds" between the parties to

6

the Agreements themselves. (*Id.* at 5.) The plaintiffs cite their affidavits (*id.* at 6), in which they state that they "[had] never seen the employment agreement . . . prior to the commencement of this instant action" and that they "[were] not aware that [they] entered into an arbitration agreement" or into "any employment agreement with the [d]efendants." (ECF No. 24-1 ¶¶ 2, 4; ECF No. 24-2 ¶¶ 2, 4; ECF No. 24-3 ¶¶ 2, 4.)[6] Hur "had [them] sign" one to three "single pages" "[a]fter [they] started working for the [d]efendants," but "[w]hen [they] asked [Hur] what the[] documents were, he refused to explain," and "told [them] that the documents were not important, and to just sign them." (ECF No. 24-1 ¶ 3; ECF No. 24-2 ¶ 3; ECF No. 24-3 ¶ 3.) "None of the terms of the employment agreement[s] were ever explained to them." (ECF No. 24-1 ¶ 5; ECF No. 24-2 ¶ 5; ECF No. 24-3 ¶ 5.) Yi and Sam Kim also state that they are "unable to read English" (ECF No. 24-2 ¶ 6; ECF No. 24-3 ¶ 6), and the defendants acknowledge that they did not provide any interpretation of the agreements before the plaintiffs signed them (ECF No. 24-8 at 9–10).[7]

---

[6] The defendants say that Yi and Sam Kim's affidavits, which are in English, are not admissible because the two plaintiffs attested that they were "unable to read English," but did not submit evidence showing that they understood the affidavits they signed. (ECF No. 25 at 6; *see also* ECF No. 24 at 6 (contending that all "[p]laintiffs barely speak and understand English").) When "a party relies on an English-language declaration of a person whose native language is not English, that party must 'also submit documents sufficient to establish that [the declarant] understood what he was signing." *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 210 (E.D.N.Y. 2021) (quoting *Heredia v. Americare, Inc.*, No. 17-CV-6219, 2020 U.S. Dist. LEXIS 122880, at *8–9 (S.D.N.Y. July 13, 2020)). However, some courts have "accepted English-language declarations from non-English speaking signatories without dwelling on technical improprieties." *Heredia*, 2020 U.S. Dist. LEXIS 122880, at *10 (collecting cases). Here, although the plaintiffs provide no "means of assurance that [they] understood what [they] were signing," *id.* at *9, it is not necessary to decide the admissibility issue, because the Court's decision on the merits would be the same with or without the affidavits.

[7] The plaintiffs also identify apparent formatting and stylistic errors in the Employment Contracts: the pages are not numbered, the arbitration provision has a "slightly different indentation," and some provisions refer to the plaintiffs with incorrect pronouns. (ECF No. 24 at 4 n.1, 5–6.) These are "scrivener's errors" that do not alter the parties' intentions. *AllCity Family Healthcare Ctr., Inc. v. Boss Surgical Grp., LLC*, No. 12-CV-6428, 2014 U.S. Dist. LEXIS 113349, at *21–22 (E.D.N.Y. Apr. 23, 2014). That the signatures were on a separate page (ECF No. 24 at 5) is also of no moment, particularly

Although the plaintiffs do not explicitly claim that the Employment Agreements were fraudulently executed or induced, their arguments suggest those claims. (*See* ECF No. 24 at 5–7.) A fraud-in-the-execution claim is a challenge to the fact of a contract's existence, whereas a fraud-in-the inducement claim "attacks the validity" "of a contract that is acknowledged to exist." *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2016 U.S. Dist. LEXIS 119069, at *31, 39 (E.D.N.Y. Sept. 2, 2016). The Court must address a fraudulent execution claim, rather than send it to arbitration. *McCaddin v. S.E. Marine Inc.*, 567 F. Supp. 2d 373, 378 (E.D.N.Y. 2008) ("[A]ny triable issues of fact regarding fraud in the execution must be addressed by the court and not the arbitrator."). But a "claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)).

Construed liberally, the plaintiffs' argument posits that the defendants misrepresented the significance of the Employment Agreements in order to get them to sign the Agreements without reading them.[8] The Court construes this claim as a fraudulent execution claim, which arises "in

---

as the text above the signatures refers to "this entire contractual agreement." (*See, e.g.*, ECF No. 24-5 at 11.)

[8] The plaintiffs do not raise a genuine issue of material fact about whether they signed the Agreements, to the extent they mean to make that argument. Chul Kim and Sam Kim admit that the signatures on the Agreements are theirs (*see* ECF Nos. 23-11, 23-15), and Yi does not unequivocally deny that the signature is his (ECF No. 23-7). *Doctor's Assocs. v. Jabush*, 89 F.3d 109, 114 (2d Cir. 1996) ("To establish a genuine issue entitling a party to a jury trial, 'an unequivocal denial that the agreement [to arbitrate] had been made [is] needed, and some evidence should [be] produced to substantiate the denial." (quoting *Almacenes Fernandez S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945))). Moreover, the signatures on the Agreements match the plaintiffs' signatures on the attestations to the veracity of the plaintiffs' affidavits. *Contemporary Mission v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981) ("[A]n opposing party's facts must be material and of a substantial nature, not fanciful, frivolous,

8

those 'rare cases' where 'the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect.'" *Revak v. SEC Realty Corp.*, 18 F.3d 81, 91 (2d Cir. 1994) (quoting E.A. Farnsworth, Contracts § 4.10 (1990)); *Langley v. FDIC*, 484 U.S. 86, 94 (1987) (describing fraudulent execution as "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents"). To prevail on this claim, the plaintiffs must show "excusable ignorance of the contents of the writing." *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678, 2015 U.S. Dist. LEXIS 61421, at *36 (S.D.N.Y. May 6, 2015) (quoting *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 32 (2d Cir. 1997)); *see* Restatement (Second) of Contracts § 163 comment *a* (1981) (Fraud in the execution occurs where there is a "misrepresentation as to the character or essential terms of a proposed contract" and a party signs without knowing or having a "reasonable opportunity to know of its character or essential terms.").

The plaintiffs contend that Hur "refus[ed] to explain to them what they were signing, telling them that the documents [were] not important[] and not to worry about them." (ECF No. 24 at 4.) Assuming that this constitutes a "misrepresentation" "going to the very character of the proposed contract," they have not established that their ignorance was excusable. The signature pages include the following language: "Now wherefore, with our complete knowledge and understanding, having read and reviewed this entire contractual agreement, the parties below freely and voluntarily execute this legal instrument and bind themselves willingly to it on [the day of signature]," followed by the plaintiffs' and Ben Hur's signatures. (*See* ECF Nos. 23-5 at

---

gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicious."); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

9

11, 23-9 at 11, 23-13 at 11.) "A reasonably diligent person would have asked to see the first five" or as here, nine "pages before agreeing to sign [the] document." *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 764 (S.D.N.Y. 2019).

The fact that the plaintiffs could not speak or understand English does not change this result. "New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him." *Ragone v. Atlantic Video*, 595 F.3d 115, 122 (2d Cir. 2010). The plaintiffs have not alleged that they made any such effort. Although they say that they asked Hur what they were signing (ECF No. 24 at 6), "[t]here was nothing preventing [the] plaintiff[s] . . . from declining to sign the contract until [they] had an opportunity to read" a translation or from asking someone else to translate the contract, *McCaddin*, 567 F. Supp. 2d at 383. *See also, e.g.*, *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162–63 (1930) ("Ordinarily, the signer of a deed or other instrument . . . is conclusively bound thereby. . . . If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."). Accordingly, the plaintiffs' fraudulent execution allegation is insufficient to create a genuine issue of material fact as to the existence of the contract. *See McCaddin*, 567 F. Supp. 2d at 383 (collecting cases).

To the extent that the plaintiffs mean to claim fraudulent inducement, that is an issue for the arbitrator, because the plaintiffs' challenge is to the contract as a whole, not the arbitration provision specifically. *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997) (the district court properly sent the case to arbitration where there was "no fraud or misrepresentation that relates directly to the arbitration clause"); *see also, e.g.*, *Kowalewski v.*

*Samandarov*, 590 F. Supp. 2d 477, 487 (S.D.N.Y. 2008). The claim is covered by the arbitration clause, as the potential fraud "arises out of" and "relates" directly to the Employment Agreements.

**II.     The Plaintiffs' Claims Are Within the Scope of the Arbitration Agreements**

Having determined that the parties agreed to arbitrate, the Court considers whether the plaintiffs' FLSA, NYLL, NYSHRL, and NYCHRL claims fall within the scope of the arbitration clause. New York law applies to interpret the scope of the clause, and requires courts to "give effect to the parties' intent as expressed by the plain language of the provision." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003) (quoting *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001)). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations of the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987); *see also, e.g.*, *Johnson v. Electrum Partners LLC*, No. 17-CV-7823, 2018 U.S. Dist. LEXIS 104067, at *26–27 (S.D.N.Y. June 21, 2018).

The arbitration provision at issue here plainly encompasses the plaintiffs' claims. The provision mandates arbitration for "[a]ny controversy or claim arising out of or relating to th[e Employment] Agreement" (ECF No. 23-3 at 10), and is "classically broad," *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (describing as "classically broad" a clause providing arbitration for "any controversy or claim between [the parties] arising out of or relating to" the contract (alteration in original)). The plaintiffs allege that the defendants did not pay them the minimum wage, overtime, or spread-of-hours pay, and the Employment Agreements expressly address compensation. (*See, e.g.*, ECF No. 23-5 at 3.) Yi's discrimination allegations also relate directly to his employment—specifically, his relationship with the defendant Kang,

11

Kang's alleged hostile treatment of him in the workplace, the other defendants' failure to prevent this treatment, and Yi's eventual constructive discharge. (*See* ECF No. 1 ¶¶ 380–405.)

That the plaintiffs allege wage, hour, and hostile work environment claims rather than a claim for breach of the Employment Agreements does not change the analysis. The Agreements do not specify that wage and hour or discrimination claims are subject to arbitration, but "arbitration clauses may cover statutory claims even if the clause at issue does not mention the specific statutes or statutes in general." *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 500 (S.D.N.Y. 2013) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1984)). The plaintiffs' claims are therefore within the scope of the Employment Agreements' arbitration provision.

### III.     The Action Is Stayed Against All Defendants

Although the defendants ask the Court to arbitrate the action against three of the four named plaintiffs, the Court construes the motion as requesting a stay of the action in its entirety. (*See, e.g.*, ECF No. 23-2 at 5 (describing the motion as an application "to stay this action"); *see also* ECF No. 25 at 1 (requesting to "stay this matter").) A district court has discretion to stay a case pursuant to "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (quoting *WorldCrisa v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)). "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution.'" *Id.* (citation omitted). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Id.* at 110–11; *see also Kumaran v. Vision Fin. Mkts., LLC*, No. 20-CV-3871, 2022 U.S. Dist. LEXIS 139225, at *30 (S.D.N.Y. Aug. 4, 2022) ("It is well-settled that claims

are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants.'" (quoting *Moore v. Interacciones Glob., Inc.*, No. 92-CV-4789, 1995 U.S. Dist. LEXIS 971, at *19 (S.D.N.Y. Jan. 27, 1995))), *report and recommendation adopted by* 2022 U.S. Dist. LEXIS 219969 (S.D.N.Y. Dec. 6, 2022). "In such cases, a stay is warranted in part because the prior litigation or arbitration is likely to have preclusive effect over some or all of the claims not subject to arbitration." *Katsoris*, 237 F. Supp. 3d at 111.

      Hee Kim, whose claims the defendants do not seek to arbitrate, asserts the same causes of action that Yi, Chul Kim, and Sam Kim assert, based on similar allegations during an overlapping time period. The plaintiffs also seek to bring most of these claims on behalf of similarly situated employees. Given this overlap, Hee Kim's and the purported class's claims, or at least certain issues related to them, could be precluded if the arbitrator rejects the same claims asserted by different plaintiffs. Even if preclusion principles ultimately do not apply to the non-arbitrated claims, the arbitration proceedings "still may help simplify the management of [the] claims in this Court: counsel for both sides presumably will have sharpened their legal arguments during the arbitration and (if discovery becomes necessary) have resolved [some] discovery issues, allowing this Court to proceed with greater speed toward[] resolution of [the] dispute." *Byrne v. Charter Comm'cns, Inc.*, 581 F. Supp. 3d 409, 423 (D. Conn. 2022); *see also, e.g.*, *Maritimia De Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10-CV-8134, 2011 U.S. Dist. LEXIS 41148, at *16 (S.D.N.Y. Apr. 15, 2011) (finding that even though arbitration would not prove "controlling of the action before the court," a stay was appropriate because the arbitration "will have a significant bearing on this case" (citations omitted)).

13

Hee Kim also brings a defamation claim against the defendants. (ECF No. 1 ¶¶ 406–11.) Though the arbitration will probably not dispose of this claim, staying the proceedings as to this claim will avoid piecemeal litigation of Hee Kim's claims and any duplicative discovery, because facts relevant to the defamation claim—for example, about Hee Kim's and the defendants' responsibilities relating to arranging third-party transportation and keeping attendance lists—could emerge in discovery during the arbitration. *See, e.g.*, *Katsoris*, 237 F. Supp. 3d at 110; *Kumaran*, 2022 U.S. Dist. LEXIS 139225, at *30.

Accordingly, given the significant overlap between the claims in this action, the action is stayed pending the completion of arbitration.

## CONCLUSION

For these reasons, the defendants' motion to compel arbitration is granted. The action is stayed pending the completion of arbitration, pursuant to Section 3 of the FAA. 9 U.S.C. § 3.

**SO ORDERED.**

                                                               s/Ann M. Donnelly

                                                ANN M. DONNELLY
                                                United States District Judge

Dated: Brooklyn, New York
        March 6, 2024